G. F. LOHMAN, *d. b. a.* CALHOUN REALTY COMPANY, v.
EDGEWATER HOLDING COMPANY AND OTHERS.[1]

August 27, 1948.

No. 34,679.

[1]Reported in 33 N. W. (2d) 842.

*Frank J. Collins* and *John Ott*, for appellant.

*Vennum, Neville, Wright & Newhall*, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying the alternative motion of defendant Edgewater Holding Company, a corporation, for amended findings or for a new trial.

Plaintiff is in the real estate business in Minneapolis, doing business under the tradename of Calhoun Realty Company, and is engaged, among other things, in selling real estate on a commission basis. The Edgewater Holding Company, hereinafter called the defendant, is engaged in operating and managing an apartment building known as Edgewater Court, located at 1805 West Lake street, Minneapolis. Also named as defendants in the complaint were Benjamin C. Derrick and Mae E. Derrick, his wife, who together owned 50 percent of the stock of the company at the time of the commencement of this action and who purchased all the stock before the case was decided by the trial court. Plaintiff sued defendants to recover a real estate commission claimed to be due him for finding an alleged purchaser for Edgewater Court. The trial court found for plaintiff for the full amount of the claimed commission of $5,600 against the corporation and dismissed the action with prejudice as to the defendants Derrick.

The issues for determination on this appeal are:

(1) Whether defendant, owner of the real estate in question, employed plaintiff as its agent to find a purchaser for the real estate involved; and

(2) Whether plaintiff found a prospective purchaser who was ready, willing, and able to buy the property on terms authorized by defendant, even though no sale was completed.

The authorization to list the property for immediate sale at $120,000, or at a lesser amount, with certain stipulations, was embodied in a written contract dated February 25, 1946, providing in part as follows:

"Now, therefore, it is hereby agreed by and between the parties to this agreement that pending a decision of the District Court, Hennepin County, Minnesota, on the petition of the party of the second part for the involuntary dissolution of Edgewater Holding Company, that the affairs of the corporation will be conducted as follows:

"1. That Benjamin C. Derrick shall continue to manage the affairs of the corporation.

\* \* \* \* \*

"4. That the real estate owned by the corporation will be listed for sale with such realty companies as either of the parties might select for sale at $120,000.00. If any buyer is found that is willing to pay $120,000.00 for the property, the property will be sold immediately. If a buyer is found that offers a lessor [sic] amount, any party to this agreement may accept such offer for a lessor [sic] amount, whereupon the other parties to this agreement shall have 10 days in which to accept such offer or purchase the property for the amount of such offer. Such offer to purchase shall be accompanied by an earnest money contract with a $5000.00 down payment.

"5. Upon the sale of the property by the corporation either to a stranger or to one of the parties hereto, the corporation will immediately proceed to liquidate its affairs and distribute the proceeds to the stockholders according to their stock interest herein after the payment of all obligations of the corporation."

The agreement above referred to was entered into between the Derricks, who then owned 50 percent of the stock of defendant, as parties of the first part, and Rudolph Ertsgaard, who owned the other 50 percent of the stock, as party of the second part. The parties to this agreement were the sole owners of the entire capital stock of defendant and were also its sole directors at the time the

agreement was entered into. As recited in the agreement, its making was prompted by the fact that there was then pending in the district court of Hennepin county an action, brought by Rudolph Ertsgaard, for the involuntary dissolution of defendant.

Under the authority of the agreement, Rudolph Ertsgaard, through his attorney, Leonard W. Simonet, had the property listed with several real estate companies, including plaintiff. There is also evidence that Derrick himself gave plaintiff a listing during the course of a conversation with Stanley Newhall, plaintiff's sales manager. Newhall testified as follows: "So I asked him what he was asking for the property, and he said $120,000, and then followed that up by saying, 'That is too much money for it, but bring me an offer.' " Derrick denied this as being ridiculous. We need not here decide whether Derrick made a listing with Newhall, for the authority of either of the parties to the agreement dated February 25, 1946, to list the property was coextensive, and it is undenied that Ertsgaard did list the property for sale with plaintiff.

Plaintiff, acting through Newhall, presented an earnest money contract dated February 23, 1946, but signed by Mrs. Peter Anderson, according to Newhall, about February 26, 1946, for the purchase of the property at the agreed price of $120,000. Derrick and his wife refused to sell to the prospective purchaser, without stating any reasons for refusing to accept the offer, and did not sign the earnest money contract, personally or on behalf of the corporation, ratifying the agreement and sale made thereby, although it was signed by O. J. Ertsgaard as attorney in fact for Rudolph Ertsgaard. Subsequently, on April 16, 1946, Ertsgaard entered into a stipulation wherein he agreed, among other things, to sell his interest in the corporation to the Derricks.

As evidenced by paragraph four of its separate answer, defendant denied that the contract of February 25, 1946, was the contract of defendant. This ground appears to have been abandoned on appeal, as defendant does not argue the point in its brief.

■ Under our statute, it is clear that by the agreement of February 25, 1946, defendant, acting through the members of its board of

directors, who were also its sole shareholders, authorized the parties to the agreement to list Edgewater Court for sale under the terms of the agreement with whatever agents they might select. M. S. A. 301.26, subd. 11, provides:

"Any action which * * * may be taken at a meeting of the shareholders, may be taken without a meeting if authorized by a writing signed by all of the holders of shares * * *."

Section 301.28, subd. 4(7), provides:

"Any action which might be taken at a meeting of the board of directors may be taken without a meeting if done in writing signed by all of the directors;"

Under these statutory provisions, it is manifest that the agreement entered into was the act of defendant and therefore binding upon it.

■ It is clear that if Mrs. Peter Anderson, the prospective buyer produced by plaintiff, was ready, willing, and able to purchase Edgewater Court under the terms authorized by the agreement plaintiff is entitled to his commission and that the decision of the trial court must be affirmed.

"A broker is entitled to his commission when he has performed all that he undertook to perform. * * * In the absence of a contrary agreement a broker to sell realty is entitled to his commission when he produces a purchaser ready, willing, and able, to purchase the property on the terms fixed by the owner, or when he obtains a contract from a proposed purchaser able to buy whereby he is legally bound to buy on the authorized terms. * * * It is unnecessary that the principal and purchaser actually be brought face to face, but the principal must be notified that such a purchaser has been found and afforded a full opportunity to make a binding contract with him for the sale of the land on the terms authorized." 1 Dunnell, Dig. § 1147.

In Kaercher v. Schee, 189 Minn. 272, 249 N. W. 180, 88 A. L. R. 294, the action was based wholly upon the claimed finding of the

purchasers of the land, notice to defendants that such purchasers had been procured and were ready to complete the purchase, the refusal of defendants to make the sale, and withdrawal of their offer to sell after being so notified. That action was not for the recovery of a commission from defendants, but for damages because of defendants' breach of their agreement with plaintiffs to sell the land to purchasers procured by the plaintiffs, from whom plaintiffs were to receive their commission. This court there said (189 Minn. 277, 249 N. W. 182):

"* * * So the general rule, as stated in 9 C. J. pp. 623, 624, 625, § 102, is that where a broker finds a customer able and willing to enter into a transaction on the terms proposed by the principal he cannot, unless there is a special contract to the contrary, be deprived of his right to compensation by reason of the principal's refusing to complete the sale without having good grounds for his refusal. The authorities are cited in note 68. 4 R. C. L. p. 255, and note 12; 4 R. C. L. p. 333, § 68."

There can be little serious question as to Mrs. Anderson's willingness and ability to buy. That she intended to buy is apparent from the fact that she signed the earnest money contract. That she was able to buy is evidenced by her uncontradicted testimony to the effect that she owned two apartment buildings valued respectively at $80,000 and $75,000, against which there was a total encumbrance of only $8,000; that she had just sold a duplex for $19,000; and that after her offer to purchase Edgewater Court had been refused she purchased another apartment building for $87,500. The burden of proof was on defendant to show that the purchaser was not ready, willing, or able to buy. This it failed to do.

Defendant does not question the authority of either of the parties to the agreement of February 25, 1946, to list the property at $120,000 under the terms of the agreement. It contends, however, that the authority was only to list the property for sale, and that the contract did not attempt to fix all the essential terms and conditions of the sale of the property, and that no commission could have been earned until buyer and seller were brought together as to these

terms. It further contends in its brief, more specifically, that the earnest money contract signed by Mrs. Anderson varied from the terms authorized by the terms of the agreement, in that defendant never intended to include in the sale, at the $120,000 figure, certain items of personal property which were listed in the earnest money contract as going with the building, including carpeting, drapes, ranges, refrigerators, furniture, furnishings, and the like. In support of this argument, defendant pointed to the fact that no mention was made in the agreement of February 25, 1946, of any personal property which would pass under the sale, and to the clause in the earnest money contract providing that it would not be binding unless approved by the owner in writing.

It is not necessary to determine the merits of defendant's contentions on this issue in order to determine the rights of the parties on appeal. A review of the record indicates that this objection was never raised in the trial court. No reference was made in the testimony to the inclusion of personal property in the earnest money contract. Neither was that ground of objection or any other ground stated as a reason for refusing to sell to Mrs. Anderson. The objection that the earnest money contract included certain personal property which was not meant to be included in the sale of the apartment building was raised for the first time on appeal. The record contains ample evidence to show that the reasons the Derricks had for preventing the corporation from selling were other than nonconformity of the earnest money contract to the terms of the listing. Derrick testified at the trial that he "never intended to sell," that he "never had in mind we would sell the property," and that it was his understanding that he was "not bound by this agreement." He said that he signed the contract in order to get a price at which they could settle for the stock.

The ground relied upon by defendant in the trial below, but apparently abandoned on appeal, was that there was no corporate act employing plaintiff as agent. On this appeal, the question of nonconformity of the earnest money contract is raised. From our examination of the record, it appears to us that defendant is attempting

to shift its position on this appeal. It is settled law that a party may not shift his position on appeal. To permit him to do so would be unfair to the adverse party in not giving an opportunity to meet the contention by evidence and argument, and would turn the appellate court into a court of first instance. 1 Dunnell, Dig. & Supp. § 401. As stated in Nelson v. Nicollet Clinic, 201 Minn. 505, 511, 276 N. W. 801, 804: "A party must stand on the rights which he claims and asserts upon the trial." In Peoples State Bank v. Dickie, 191 Minn. 558, 560, 254 N. W. 782, 783, it was said: "A party may not try his case on one theory and upon motion for a new trial or appeal shift to another."

It is true that this general rule is subject to certain qualifications, among which are the rules that a party will not be prevented from raising the objection that the record shows conclusively as a matter of law that the adverse party has no cause of action or defense on the merits or that the court is without jurisdiction of the subject matter, 1 Dunnell, Dig. & Supp. § 401; and that a contract is illegal or contrary to public policy. Craig v. Baumgartner, 191 Minn. 42, 254 N. W. 440. In the making of these exceptions, however, the court has been careful to say that it was not abrogating the general rule by so doing.

Reviewing the evidence as it stood when the trial court made its decision, we cannot say as a matter of law that plaintiff has failed to establish a cause of action, as defendant contends on appeal, on the ground that plaintiff did not conform to the terms of the authorized listing. If it is defendant's contention that plaintiff is not entitled to recover the commission sued for because of nonconformance, this was a matter of defense which should have been raised by defendant. This was not done in the pleadings, nor was there any evidence submitted at the trial to the effect that plaintiff had not conformed to the listing provisions, because of the inclusion of certain personal property in use in the building and not belonging to tenants. It cannot be said as a matter of law under the facts and circumstances of this case that because the earnest money contract included certain items of personal property it would require a holding

that plaintiff did not comply with the terms of the contract, because, if that issue had been raised at the trial of the case, plaintiff could have been permitted to introduce evidence tending to show that the amount of personal property involved was either nominal or usual in this type of sale. We need not decide that point here, for under the general rule defendant has waived its right to assert this defense on appeal to this court.

The rule continues to be an established rule of this court, and we believe the case before us is one which peculiarly calls for the application of the general rule. Defendant appears to have made no attempt to raise the issue of nonconformity of the earnest money contract at any stage of the trial in the court below. In its brief on appeal, defendant cites no rule and submits no reasoning which could bring this case within any of the exceptions to the general rule. That being so, we hold that defendant, having failed to raise the question at the trial, cannot now assert the objection of nonconformity of the earnest money contract with the terms of the authorized listing.

■ Briefly summarizing the practical facts in the case before us, a review of the agreement of February 25, 1946, between the Derricks and Rudolph Ertsgaard, sole owners of all the capital stock of defendant, indicates clearly that one of the purposes of the agreement was to list the real estate of the corporation for sale for $120,000, and that either of the parties to the agreement could make these listings with such realty companies as they might select. The trial court found that the Edgewater Court apartment building was substantially the only asset of defendant; that one of the parties to the agreement, through his duly authorized agent, listed the property for sale with plaintiff at $120,000; that before any other offers were made plaintiff produced a purchaser ready, willing, and able to purchase the property for that amount and presented a signed earnest money contract to defendant for its signature, which the latter refused to sign.

The language of the agreement of February 25, 1946, with reference to the authority to sell, seems very clear and understandable. It specifically said in part:

"* * * If any buyer is found that is willing to pay $120,000.00 for the property, the property will be sold immediately."

Benjamin C. Derrick testified at the trial that the earnest money contract signed by Mrs. Anderson was never presented to him, that he was sued in the matter before he ever saw the contract. However, it appears from the record that he did have some contacts with Stanley Newhall, plaintiff's agent, and Mrs. Anderson, the prospective purchaser, before the earnest money contract was signed, and that his attorney was his authorized agent. Also, it is undisputed that shortly after the earnest money contract was signed it was delivered to Derrick's attorney, who must have in some manner notified his client. It is evident from Derrick's own testimony that he may not have been too anxious to see the earnest money contract signed by Mrs. Anderson, as he testified that when he signed the agreement of February 25, 1946, authorizing either of the parties to list the property for sale, he never intended to sell and never had in mind that he would sell the property, and that he merely signed the agreement in order to get a price at which the parties could settle for the stock. These do not appear to be very convincing reasons for his failure to go through with the deal on behalf of defendant, especially in view of the language of the agreement that if a $120,000 purchaser were produced the property would be sold immediately. It would be unfair to say that after the Derricks signed such agreement, and after one of the parties to the agreement listed the property with plaintiff, and after plaintiff did produce a buyer which the court found ready, willing, and able to purchase, the entire transaction could be brushed aside merely by Derrick's saying that he never intended to sell when he signed the agreement, and that he did it only to get a price at which he could settle for the stock.

Legal responsibilities such as those evidenced by the agreement cannot be set aside so lightly. We hold that there appears to be

ample evidence to sustain the trial court's finding that the prospective purchaser produced by plaintiff was ready, willing, and able to buy the property involved and that plaintiff thereby became entitled to his broker's commission. In this view of the case, it becomes unnecessary to consider certain related assignments of error made by defendant, as they are not necessary to the disposition of the case.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that plaintiff has failed to establish his cause of action and that defendant corporation's motion for dismissal at the close of trial should have been granted. At most, plaintiff established a listing of defendant's real property for sale at $120,000. In this listing, as well as in the prior oral agreement between the stockholders of defendant, it was specifically provided that the sale should cover real property only for the specified sales price of $120,000. The earnest money contract submitted by plaintiff, however, provided for a sale at $120,000 to plaintiff's principal, and covered not only the real property of the corporation, but, in addition, the following list of *personal property* located on the described real estate:

"* * * and all furnishings and furniture, drapes and curtains in twenty-four apartments, not belonging to tenants, (list of furniture and furnishings in the apartments to be attached to this agreement)."

In other words, plaintiff at no time established that he had procured a purchaser, ready, able, and willing to purchase the property in accordance with the provisions of the listing agreement. Under such circumstances, defendant was not obligated to proceed with the sale and was justified in rejecting the earnest money contract submitted because of its variance with the terms of the listing agreement. The majority opinion in effect holds defendant liable for a commission on the sale of the building and, in addition, 24 furnished apartments and other personal property, for a total price at which, at most, it had authorized the sale of the real property alone.

Nor do I feel that defendant waived its defense in this respect at the trial of the action. The burden was upon plaintiff to sustain the cause of action covered by the complaint. As indicated, he had failed in this respect when he rested his case. The record clearly established that at this stage of the proceedings he was not entitled to recover under any view of the law or facts.

Defendant corporation then moved for dismissal upon the ground that plaintiff had failed to prove his cause of action against any of the defendants. Subsequently, its motion for a new trial was in part based upon lack of evidence to establish that plaintiff had produced a buyer for the building on the terms authorized by defendant. On appeal, its assignments of error again cover this point.

As stated in 1 Dunnell, Dig. § 404:

"Where parties consent to try their cause below upon a particular theory of what the law of the case is, they cannot complain on appeal if the result is correct according to that theory, however incorrect the theory may be. *This is the general rule, but it is not applicable where the record shows conclusively that the party recovering is not entitled to recover under any view of the law, as where a complaint shows conclusively, so that it cannot be helped by proof or amendment, that there is no cause of action, or where it appears by evidence incapable of being rebutted or explained away that there is no cause of action, or that there is a defence."* (Italics supplied.)

Here, the record shows conclusively that plaintiff established no cause of action, and his recovery should not have been sustained.