ERA TOWN AND COUNTRY REALTY, INC., Respondent,

v.

TEVAC, INC., Appellant.

No. C8-85-427.

Court of Appeals of Minnesota.

Nov. 12, 1985.

---

Heard, considered and decided by SEDG-WICK, P.J., and LESLIE, and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from a judgment that respondent had fully performed its obligation under the listing agreement with appellant by procuring a buyer ready, willing and able to purchase the realty on the terms listed in the agreement and awarding respondent its full brokerage commission. We affirm.

## FACTS

Respondent ERA Town and Country Realty, Inc. (ERA) is a real estate agency operating under the brokerage license of Lloyd Johnson. Appellant TEVAC, Inc. (TEVAC) is a closely held corporation which owns and operates a mobile home park ("Sunrise Acres").

TEVAC listed Sunrise Acres for sale with ERA for a sale price of $125,000, a down payment of $20,000 and an interest rate of 10% per year on the unpaid balance. Other terms of the sale were negotiable. The listing agreement also provided for a commission payment of 10% to ERA upon the sale or contract for sale of the property.

ERA presented TEVAC with five offers for sale of the realty made by John Zacher. The first four offers were rejected with the rejections being communicated to ERA by Florine Knutson, a secretary for the corporation on an average of 5–10 days after the offers were first submitted.

Zacher's final offer was mailed by ERA to TEVAC on February 28, 1984. Although the offer did include some variances from the terms contained in the listing agreement it came closer to meeting the purchase requirements of TEVAC than any of the previous offers.

The day after the offer was submitted Johnson called Florine Knutson to find out

Peter L. Vogel, Little Falls, for respondent.

Lynn J. Hummel, Detroit Lakes, for appellant.

whether TEVAC's shareholders had accepted the latest proposal. Johnson testified that Knutson told him the offer had been rejected. Knutson testified that she told Johnson that the shareholders had not yet had a chance to consider Zacher's fifth offer. She further testified that Johnson insisted the offer be sent back immediately to ERA even though he knew it had not been considered by the corporation.

Several days after Johnson's telephone call the TEVAC shareholders examined the fifth offer and indicated it was acceptable. By that time, however, Zacher was no longer interested in the property and had withdrawn his offer.

An action was brought by ERA for payment by TEVAC of the $12,500 brokerage commission it claims was earned when it located a buyer willing to accept TEVAC's purchase terms. The trial court, sitting without a jury, found that ERA had fully performed its obligation under the listing agreement by procuring a buyer ready, willing, and able to purchase Sunrise Acres on the terms listed in the agreement. Judgment was entered in favor of ERA for the full commission.

### ISSUES

1. Did the trial court err in its determination that ERA had produced a buyer ready, willing and able to buy Sunrise Acres on the terms contained in the listing agreement?

2. Did ERA's broker reasonably rely on the rejection communicated to him by TEVAC's agent?

3. Did ERA's real estate broker fraudulently induce TEVAC to enter into the listing agreement?

### ANALYSIS

#### I

In *Lohman v. Edgewater Holding Co.*, 227 Minn. 40, 33 N.W.2d 842 (1948), the Minnesota Supreme Court stated the general rule governing when a real estate broker is entitled to a commission:

In the absence of a contrary agreement a broker to sell realty is entitled to his commission when he produces a purchaser ready, willing, and able, to purchase the property on terms fixed by the owner, or when he obtains a contract from a proposed purchaser able to buy whereby he is legally bound to buy on the authorized terms.

*Id.* 227 Minn. at 44, 33 N.W.2d at 845 (quoting 1 Dunnell, Dig. § 1147).

The *Lohman* rule identifies two alternatives, which if satisfied, entitles a broker to a commission: the first, if a buyer is located who is ready, willing and able to purchase on the seller's terms; and second, if a contract is obtained from a buyer able to purchase on authorized terms. Each alternative addresses a different situation. The first alternative is applicable when an able buyer offers to buy on the seller's listed terms, but the seller refuses to accept the offer. This second alternative is applicable when an agreement has been reached for purchase, either on listed or authorized terms, and the seller refuses to complete the transaction. Here, a contract for sale was never entered into by the parties, thus the second alternative is not applicable.

The question then is whether Zacher was a ready, willing and able buyer and met TEVAC's terms for sale of Sunrise Acres.

The trial court found that Johnson located an "able" purchaser to buy TEVAC's property. TEVAC did not make a motion for amended findings or new trial. Therefore, the only issues on appeal "are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

■ The term "able" refers to the purchaser's financial ability not only to make the initial payment required to meet the terms of the seller, but also to complete the contract of purchase according to its terms. 2B Dunnell Minn. Digest 2d Brokers § 4.20 (3d ed. 1978). The general rule is stated as follows:

"Generally speaking, a purchaser is financially ready and able to buy: (1) If he has the needed cash in hand, or (2) if he is personally possessed of assets—which in part may consist of the property to be purchased—and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, or (3) if he has definitely arranged to raise the necessary money— or as much thereof as he is unable to supply personally—by obtaining a *binding commitment* for a loan to him for that purpose by a *financially able third party*, irrespective of whether such loan be secured in part by the property to be purchased * * * "

*Shell Oil Co. v. Kapler*, 235 Minn. 292, 298, 50 N.W.2d 707, 712 (1951) (emphasis added; footnotes omitted).

■ The evidence supports the finding that Zacher was an "able" purchaser. Zacher was a successful owner of four other mobile home parks which operated at close to full occupancy and generated a net income of approximately $1,500 a month. Each of the mobile home parks increased in value after his purchase, through increased rentals and occupancy and improvements to the property. In addition, Zacher owned an apartment and office building with equity of $76,000 and rentals generating a net monthly income of $998.

The fact that Zacher presently has a number of credit obligations does not in itself disqualify him as an "able" purchaser where there is no evidence that he has failed to meet any of his obligations.

■ The trial court's finding that Zacher was willing to buy on the terms fixed by TEVAC is also supported by the evidence.

In Zacher's final proposal he insisted on a contingency arrangement which would have allowed him to withdraw his offer if his inspection of TEVAC's income and expense records revealed figures different than those represented by them. TEVAC argues this contingency included as part of the purchase agreement produced by ERA, if executed, would have given Zacher an option to purchase Sunrise Acres. Thus, by definition, Zacher was not ready, willing and able *to buy*, but rather was only ready, willing and able to exercise an *option* to *buy* which did not meet the terms specified by TEVAC in the listing agreement. The argument is not persuasive.

The "option" created by the contingency clause could only be exercised if the information previously supplied by TEVAC was false, fraudulent or misleading. If, upon inspection of the income and expense record, no discrepancies were found, Zacher would be bound by the purchase agreement to complete the sale. There is no other evidence that TEVAC based its rejection on the contingency included in the purchase agreement.

## II

■ Johnson's reliance on Knutson's response was not unreasonable for all of his previous dealings with TEVAC were conducted through Knutson. The record supports the trial court's conclusion that TEVAC's secretary Florine Knutson had the implied authority to reject Zacher's final offer on behalf of the corporation. *See Hornblower and Weeks-Hemphill Noyes v. Lazere*, 301 Minn. 462, 472, 222 N.W.2d 799, 805 (1974).

## III

TEVAC argues that Johnson fraudulently induced them to enter into the listing agreement by advising them that the agreement did not obligate TEVAC to sell to the purchaser located by him. This issue was not addressed at trial nor was it pled, therefore, it is not properly before this court. *Estes v. State Farm Fire and Casualty Company*, 358 N.W.2d 123, 125 (Minn.Ct.App.1984) (quoting *Thayer v. American Financial Advisors, Inc.*, 322 N.W.2d 599, 604 (Minn.1982)).

## DECISION

The trial court properly determined that respondent had fully performed its obli-

gation under the listing agreement with appellant by procuring a buyer ready, willing and able to purchase the realty on the terms listed in the agreement and that respondent's agent had the implied authority to reject offers on behalf of the corporation. The trial court's judgment granting respondent its full brokerage commission is affirmed.

Affirmed.