**CENTURY 21–BIRDSELL REALTY, INC., Appellant,**

v.

**Robert J. HIEBEL, et al., Respondents.**

**No. C7–85–760.**

Court of Appeals of Minnesota.

Dec. 24, 1985.

Review Denied Feb. 14, 1986.

Douglas P. Anderson, Rosenmeier & Anderson, Little Falls, for appellant.

Robert J. Hiebel, pro se.

Considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Century 21-Birdsell-Werlinger Realty, Inc. (Century 21) appeals from a judgment filed December 19, 1984, denying its claim for a real estate commission, and from an order filed March 18, 1985, denying its motions for a new trial or amended findings. We reverse.

## FACTS

Robert and Rosaline Hiebel own a 200 acre farm in Todd County. On February 25, 1983, Robert Hiebel signed a listing agreement with David Leagjeld, a licensed real estate sales representative for Century 21. By the agreement, Hiebel agreed to employ Century 21 as his sole agent to sell a portion of the land (160 acres) for $152,000. The contract authorized him to offer a contract for deed with 25% down and 9% interest for 10 years with a $3,000 payment of principal per year.

The listing agreement further provided:

I agree to pay 6 percent of the selling price in the event that during the period of this agreement you, or your agent, or cooperating brokers, secure purchaser on the above terms or other terms to which I may consent, or if property is sold or exchanged by you or any other person, including myself.

A period of three months was set for the employment term.

David and Pamela Buysse entered into a purchase agreement with the Hiebels on March 17, 1983. The purchase agreement contained two contingencies. First, the contract was contingent upon the buyers being approved for financing through the Farmer's Home Administration (FmHA). Second, the buyers had to obtain a buyer for their farm. The closing date was to be May 1, 1983.

David Buysse and his father viewed the property on March 30, 1983. Robert Heibel and his father Wencil were there at the time and pointed out several negative features of their buildings. For example, they told Buysses that the house needed shingling, and part of the roof had to be replaced. Wencil Hiebel then told Buysses that the farm was not for sale. Later, Robert Hiebel telephoned David Buysse and allegedly said that he could find ways of "making it rough" for Buysses if he bought their farm.

David Buysse testified that because of these conversations he called Jim Claude, the Todd County supervisor whom he was dealing with at the FmHA. He told Claude to wait to appraise the Hiebel farm until these problems were taken care of.

Buysses found a buyer for their farm and had signed a purchase agreement by March of 1983. This eliminated one contingency in the purchase agreement. As for the second contingency, the FmHA loan, Jim Claude testified that FmHA had made no firm commitment for the loan. According to Claude, FmHA had three requirements before a loan commitment would be made. First, the county committee had to determine that the potential borrower is eligible for the particular loan that he or she is applying for. Second, there must be a showing that the borrower has adequate security for the loan. Third, the committee must be satisfied that the borrower has the repayment ability required for the particular loan.

Buysses had been determined eligible for the loan on March 23, 1983, but the other two requirements had not been satisfied. Consequently, no loan commitment from the FmHA was obtained as required by the purchase agreement.

A mutual release was entered into by the Hiebels and Buysses on April 8, 1983. The release rescinded the purchase agreement but preserved any claims or obligations of the seller or buyer to any third party, specifically including the real estate agent. Although the sale did not go through, Century 21 seeks to recover the 6% commission ($9120) provided for in the listing agreement.

A trial was held on November 7, 1984. The trial court found there was no showing by Century 21 of approval from FmHA for financing. The court concluded that the plaintiff had failed to show it provided the defendants with a buyer who was ready, willing and able to perform. Judgment was entered for the defendants.

Century 21 moved for a new trial or amended findings of fact on a hearing on January 9, 1985. The trial court denied the motion, stating in part:

> The Court found that the buyers did not have the "ability" to purchase the Defendants' land as no funds were ready and available to meet the requirements of performance. At no time were the buyers approved for Farmer's Home Administration financing, but at all times appeared to be eligible to apply for such financing.

> It is not the duty of the Court to seek ways in which the buyers could be ready, willing and able to go through with the purchase agreement, but in a case such as that in the present case, which is one for a real estate commission, need make only narrow determination as to whether

or not the buyers were ready, willing and able.

In the present case, the Court found that the buyers were lacking in their ability to perform, together with other matters set forth in the Findings.

## ISSUE

Did the trial court clearly err in finding that the real estate agent was not entitled to the commission?

## ANALYSIS

In *ERA Town and Country Realty, Inc. v. TEVAC, Inc.*, 376 N.W.2d 526 (Minn.Ct. App.1985), this court stated that a broker is entitled to a commission if one of two alternatives apply:

The *Lohman* rule identifies two alternatives, which if satisfied, entitles a broker to a commission; the first, if a buyer is located who is ready, willing and able to purchase on the seller's terms; and second, if a contract is obtained from a buyer able to purchase on authorized terms. Each alternative addresses a different situation. The first alternative is applicable when an able buyer offers to buy on the seller's listed terms, but the seller refuses to accept the offer. This second alternative is applicable when an agreement has been reached for purchase, either on listed or authorized terms, and the seller refuses to complete the transaction.

*Id.* (citing *Lohman v. Edgewater Holding Company*, 227 Minn. 40, 44, 33 N.W.2d 842, 845 (1948)). The second alternative applies here since the buyer and seller entered into a purchase agreement.

■ In both situations, the buyer must be "able" to purchase the property. "Able" refers to the purchaser's financial ability not only to make the initial payment required to meet the seller's terms, but also to complete the purchase agreement according to its terms. *Id.* An able buyer is defined as follows:

[A] purchaser is financially ready and able to buy: (1) If he has the needed cash in hand, or (2) if he is personally possessed of assets—which in part may consist of the property to be purchased—and a credit rating which enable him with reasonable certainty to command the requisite funds at the required time, or (3) if he has definitely arranged to raise the necessary money—or as much thereof as he is unable to supply personally—by obtaining a *binding commitment* for a loan to him for that purpose by a *financially able third party*, irrespective of whether such loan be secured in part by the property to be purchased * * *.

*Id.* (quoting *Shell Oil Company v. Kapler*, 235 Minn. 292, 298, 50 N.W.2d 707, 712 (1951)).

Here the buyers were not yet able to purchase on the seller's terms since they had no FmHA loan commitment. In this sense, the real estate agent failed to produce an able buyer. The agent, however, had until the actual closing date in which to produce an able buyer. Performance by the agent was not due when the parties to the purchase agreement rescinded it.

■ The rescission of the purchase agreement prior to the closing was an anticipatory repudiation of the listing agreement by the Hiebels. *See Wood v. Schlagel*, 375 N.W.2d 561, 564 (Minn.Ct.App. 1985) (buyer's rescission of purchase agreement which stated sellers would have 120 days from written objection by buyers to make title correction constituted anticipatory breach where satisfaction was made within 120 days of buyer's objection). The rescission demonstrated an unequivocal intent on the part of the Hiebels not to perform. *See Space Center, Inc. v. 451 Corporation*, 298 N.W.2d 443, 450–51 (Minn.1980) (sellers who lost title had no intention of selling). The supreme court has noted:

It is basic hornbook law that an unconditional repudiation of a contract, either by words or acts, which is communicated to the other party prior to the time fixed by

the contract for his performance constitutes an anticipatory breach.

*Matter of Haugen,* 278 N.W.2d 75, 79 n. 6 (Minn.1979).

■ The rescission made it unnecessary for the buyers to pursue their FmHA application, preventing the agent from producing an able buyer. A broker is entitled to the commission even if he or she fails to perform where the failure is the seller's fault. *Olson v. Penkert,* 252 Minn. 334, 343, 90 N.W.2d 193, 200 (1958) This rule is based on the principle that "no one can avail himself of the nonperformance of a condition precedent who has himself occasioned its nonperformance." *Id.*

■ Where the broker claims the seller has prevented his performance, he must show that the seller has deprived him of the opportunity to procure a purchaser at the stipulated price and in accordance with the employment terms or that the employer has deprived him of the opportunity to do so without cause. *Greer v. Kooiker,* 312 Minn. 499, 510, 253 N.W.2d 133, 141 (1977). An owner's change of mind regarding the sale of property with respect to which a listing agreement has been executed does not constitute reasonable grounds for revocation of the listing agreement. *Klawitter v. Billick,* 308 Minn. 325, 332, 242 N.W.2d 588, 593 (1976).

### DECISION

Hiebel's change of mind and subsequent rescission of the purchase agreement is not a defense to the agent's demand for the commission. The listing agreement did not require a sale to be consummated before the commission would be paid. It required only that six percent of the sale price would be paid as commission if the realtor found a buyer who could meet the seller's terms. Had Buysses failed to obtain a loan commitment by the closing date, the result might have been different.

Reversed.