CATHERINE SMITH, Execrx., etc.,

*v.*

JAMES H. KEELER.

*Filed at Ottawa, May 8, 1894.—Rehearing denied, October Term, 1894.*

1. REAL ESTATE BROKER—*sale partly on credit—proof of authority.* In an action by a real estate broker to recover commissions on sale of real estate, where it appeared that the sale was to be partly for cash and partly on credit, without any express directions as to the portion of the purchase money that should be deferred, it was held that it would be inferred that the broker should exercise his own discretion as to the portion on which credit was to be given.

2. Where nothing was said by the parties as to how the deferred payments were to be secured, the broker, in making a sale, stipulated with the purchaser that they should be secured by mortgage or deed of trust on the premises sold, bearing a fair and reasonable rate of interest: *Held*, that these provisions constituted no substantial departure from the terms of the authority conferred on the broker.

3. Authority in a real estate broker to sell real estate in Chicago, partly for cash and partly on time, when no further specific directions are given as to the terms of the contract of sale, will invest the agent with a reasonable discretion, to agree that the vendor shall furnish an abstract of title showing a good title, and provide for the return of the cash payment in case the title is not good, and making time material.

4. Where the owner of land makes no objection to the terms on which his agent has sold the same, but repudiates the sale, solely on the ground of a higher offer, the contract being oral, and within the statute of frauds, his conduct in this respect will furnish some evidence that the agent had made the sale upon terms which were within the purview of his authority, and will tend to justify a recovery against him by the broker for his commissions.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook County; the Hon. R. S. TUTHILL, Judge, presiding.

Messrs. OSBORNE BROTHERS & BURGETT, and Mr. ROBERT F. PETTIBONE, for the appellant.

Mr. ELBERT H. GARY, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

In this case, the appellee presented to the Probate Court a claim for $1,042.50 against the estate of the appellant's testator, it being for commissions alleged to be due from the testator to the appellee, upon a sale of real estate. At the hearing in the Probate Court the claim was disallowed, but, on appeal by the claimant to the Circuit Court, the matter was heard by the court without a jury, and at such hearing the claim was allowed, and judgment was rendered in favor of the appellee for its amount and costs. On appeal to the Appellate Court that judgment was affirmed, and the present appeal is from the judgment of affirmance.

No propositions were submitted by either party to be held as the law in the decision of the case, and as we understand the record, no question of law is so presented as to be reviewable in this court, unless it be the one raised by the appellant upon the decision of the Circuit Court denying her motion, made at the close of the evidence, to dismiss the appellee's claim. That motion, as the appellant correctly insists, was in the nature of a demurrer to the evidence, and the contention is, that, admitting the truth of the evidence and of all inferences fairly deducible therefrom, there is nothing to sustain the finding and judgment of the Circuit Court.

The appellant introduced no evidence, but the evidence adduced by the appellee tends to show that the appellant's testator, having certain lots in the City of Chicago which he wished to sell, employed the appellee, a duly licensed real estate broker, to sell them for him, the sale to be for such price as would net the testator $100 per front foot, the purchase money to be payable partly in cash and partly on time, but in what proportions the witness is unable to state, the appellee to receive for his commissions all he could get over $100 per foot, and the purchaser was to pay all taxes levied on the property subsequent to the year 1888.

The employment of the appellee and his authority to sell were oral. He thereupon found as a purchaser one Charles W. Clingman, and executed a written agreement with him, in the name of the testator, to sell him the lots, the frontage of which was 104¼ feet, for $11,567.50, of which $400 was paid at the date of the contract, and $4,067.50 was made payable on the delivery of a good and sufficient deed conveying the lots to the purchaser, the residue of the purchase money to be paid one-half in three years, and one-half in five years, with interest thereon at the rate of six per cent per annum payable semi-annually, the deferred payments to be secured by a mortgage or deed of trust on the premises sold.

Smith, appellant's testator, as the evidence shows, called at the appellee's office about one hour after the contract of sale was made and inquired whether the property was sold, and was informed by one of the appellee's employés that it was, and that appellee had then gone out to mail a letter explaining the sale, and Smith then promised to call again the next day. The next day he called, finding appellee in, and appellee said to him: "Well, I have sold your property;" to which Smith replied: "Well, I don't know; I don't care to sell the property just now. Last night, after I got home, some one came to my house and offered me $125 a foot for it, and I guess I better keep it." Appellee then said: "Why, it is too late at this time of sale or deal to back out; we can't treat our customers that way;" to which Smith replied: "I can't help it; I will not make a deal of it."

The evidence shows that appellee, for many years, had been employed by Smith to sell the latter's property, and had had many pieces of Smith's property in his hands for sale. The contract of sale, after its execution by the appellee, was placed on record by the purchaser, and Smith afterwards brought his bill in chancery against the purchaser to obtain the cancellation and removal of the con-

tract as a cloud upon his title. A demurrer to the bill having been overruled, the controversy, as between Smith and the purchaser, was adjusted, by a return to the latter of the $400 paid at the date of the contract, and the execution by him of a quit-claim deed of the premises to Smith.

Appellant's motion to dismiss the claim was based upon the sole ground that no authority was shown to make the sale upon the terms expressed in the written contract, and various provisions of the contract are pointed out as not coming within the purview of the express terms of the authority to sell, given by Smith to appellee. Prominent among these are those provisions which relate to the amount of the cash payments, the time given for the deferred payments, the mode in which they were to be secured, and the rate of interest. It appears that previous sales made for Smith had been made in part for cash and partly on time, and as appellee was given authority to make the sale in question in that mode, without any express directions as to the portion of the purchase money which should be deferred, the fair inference is, that it was the intention of Smith to vest him with a reasonable discretion in those respects, and we are unable to see that such discretion was to any degree abused or exceeded. Nothing seems to have been said as to how the deferred payments should be secured, but it does appear that Smith "was particular to have his money," which may be fairly held to imply that it was his wish to have the deferred payments well secured, and that seems to have been provided for by stipulating for their being secured by mortgage or deed of trust on the premises sold, and for their bearing a fair and reasonable rate of interest. We are unable to see that these provisions constitute any substantial departure from the terms of the authority conferred on appellee, when construed in the light of all the evidence.

The other provisions pointed out as being in excess of the authority given to appellee are those which required

the vendor to furnish the buyer an abstract of title, show-
ing the title to be good and free from all liens and incum-
brances, and providing that if the purchaser should fail to
perform the contract on his part, the $400 deposited should
be forfeited by him as damages, and that if the abstract
furnished did not show a good title, the $400 should be
returned to the purchaser, and the agreement should be null
and void, and making time material. Whether we may take
judicial notice of the fact or not, it is a matter of common
knowledge that substantially these provisions are usually
embraced by dealers in real estate in Chicago in their con-
tracts of sale, and at least a plausible argument might be
made to the effect that they all come within the reasonable
discretion conferred upon a real estate broker, who is em-
ployed to sell real property partly for cash and partly on
time, and where no further specific directions are given as
to the terms in which contracts of sale shall be made.

But the decision of the question now before us need not
be placed on that ground. Smith, when informed that his
broker had found a purchaser and made a sale, made no
question as to the fact of the sale or its terms, but simply
declined to carry the contract out, the sole ground of his
action being, that in the meantine he had received a better
offer, and that he had concluded not to sell at all. The
authority of his agent was not in writing, and so, as he
doubtless knew, the contract was not binding on him.
Whether he was informed of the precise terms of the con-
tract is not shown, nor does he appear to have made any
inquiries on that subject. As he had determined to avail
himself of his rights under the statute of frauds, that matter
was wholly unimportant. His failure to call in question the
assertion that a sale had been made, or to find any fault
with the terms of the contract, or even to make any in-
quiries in relation thereto, furnishes some evidence that his
broker had made a sale upon terms which were within the
purview of his authority, and which, if he had not concluded

to withdraw the property from the market, would have been perfectly satisfactory to him.    There was some evidence, therefore, tending to support the appellee's claim to commissions, and the refusal of the court to dismiss the claim was not erroneous.    The judgment of the Appellate Court will be affirmed.                          *Judgment affirmed.*