## NELS EDMUNDSON v. DAN J. PHENIX.[1]

### July 16, 1920.

### No. 21,838.

**Broker — purchaser procured within terms of offer to broker — brokerage contract for sale of land valid.**

1. A contract by defendant to pay plaintiff a fixed commission on sale of land at a fixed price with a sufficient cash payment to "secure him on the sale," the balance at 5 per cent for "five years and maybe longer" is a valid brokerage contract, and the jury's finding that it was fulfilled by procuring a purchaser ready, able and willing to buy at the price fixed, about a third down and the balance payable at 5 per cent in periods running less than five years is sustained.

**Letter admissible in evidence.**

2. A letter written to defendant, by a stranger on behalf of plaintiff,

[1] Reported in 178 N. W. 893.

communicating the fact and terms of sale was properly received in evidence.

**Evidence of subsequent sale admissible.**

3. It was proper to permit proof that defendant later sold the land, receiving a smaller payment down.

**Agent may recover commission upon sale to himself.**

4. An agent may recover compensation on a sale to himself, if the parties, with full knowledge of the facts, so agree.

**Deferred payments "on or before" specified date.**

5. A stipulation in the proposed contract of sale that the purchasers may make deferred payments "on or before" a given date was not inconsistent with the agency contract.

**Abstract of title.**

6. A stipulation that defendant should furnish an abstract of title is not sufficiently important to affect the validity of the transaction.

Action in the district court for Marshall county to recover $1,480 for services as broker in the sale of defendant's farm. The case was tried before Grindeland, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony defendant's motion for a directed verdict, and a jury which returned a verdict for $1,517.49. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*O. A. Naplin, F. B. Brian* and *Theo. Quale,* for appellant.

*A. N. Eckstrom* and *Julius J. Olson,* for respondent.

HALLAM, J.

Defendant, a resident of Illinois, owned 480 acres of land in Polk county, Minnesota. Plaintiff was his tenant. There is evidence tending to prove the following: In April, 1919, defendant went to visit his farm and was not pleased with the prospect. He urged plaintiff to buy it. Plaintiff said he had no money. Defendant said "your credit is good * * * and it don't take much money to satisfy me." Defendant then asked plaintiff to try and sell the farm. He offered the whole farm for $75 an acre, or a certain half section at $65 an acre. Plaintiff was to have 60 days to make a sale. Defendant said he would make easy terms,

"pay enough to secure the land," enough to "secure him on the sale," he said, and the balance "with five per cent interest for five years and maybe longer.. We don't need the money," he said, "we just want to sell the land." Defendant agreed to pay a commission of $1,000 on sale of the half section, and, in addition, all plaintiff could get over $65 an acre. Plaintiff was to have the privilege of buying the land himself and was to receive the commission if he should either sell or buy. Defendant then gave plaintiff this memorandum:

"Apr. 24, 1919.
  Price 473 acres $75.00 per acre.
  Com. on sale, $2,000.
  Half section $65.00 per acre. Com. $1,000.
  60 days option.
  Dan J. Phenix to Nels Edmundson."

Plaintiff negotiated a sale of one quarter to Wood Brothers at $68 an acre and agreed to take the other quarter himself at $65 an acre. On June 18 a banker at Warren, Minnesota, acting for plaintiff wrote defendant as follows:

"I am helping Mr. Edmundson finance the purchase of the NE¼ and also the Wood Brothers' purchase of the SE¼ to whom Mr. Edmundson has made sale. The way it can be handled by this is as follows:

"The NE¼ at $65 per acre would be $10,400. Commission to Mr. Edmundson, $1,000. To be paid at once $2,400. December 1, 1920, cash payment, $1,000. December 1, 1921, cash payment, $1,000. December 1, 1922, cash payment $5,000. Interest, Mr. Edmundson says you agreed should be 5 per cent, the interest to start from date of contract and the same to be payable annually on the whole amount remaining from time to time unpaid. The first interest to be December, 1920.

"On the sale of the SE¼ the purchase price would be $10,400. Cash payment, $3,400. December 1, 1920, $1,000. December 1, 1921, $1,000. December 1, 1922, $5,000. Interest at the same rate and payable in the same manner.

"Now, Mr. Phenix, I can finance the deal for these boys and Mr. Edmundson as above indicated and of course the sale will be absolutely safe to you, having received as large an amount in cash, and given con-

tract for deed for balance. There is no question but what the parties are A-1, and they will meet their payments without any question.

"Mr. Edmundson does not feel that he can handle your quarter on section 20 just now; but later on, if he has reasonably good luck, he will undoubtedly want it. I would want in the contracts, also, the privilege of paying on or before, so that they could have a chance to pay more than the payments due, if they wished. You, of course, would give deed and abstract showing good title, on December 1, 1922, when they meet their final payment. Taxes of 1918 would be for you to pay, but they would assume subsequent taxes and you would assign lease conveying your one-half of the crop.

"I trust I have made the matter plain to you, and if so, and satisfactory, please wire me immediately upon receipt of this and I will prepare contracts in duplicate in accordance therewith and mail to you at once, together with drafts covering initial payments, upon receipt of which you can execute, retaining one, and return duplicate to us, and the matter will be closed.

"Will you please wire immediately and give name of party you wish contract made to so that the matter can be definitely settled one way or the other?                                    Yours truly,
                                           "H. L. Wood,
                                                 "President."

On June 28, not having heard from defendant, the banker wired defendant: "I wrote you June eighteenth, but have had no answer. Did you get my letter? Wire."

On June 30 defendant answered by mail that the terms were not satisfactory. In September, 1919, he sold the whole tract on land contract for $87.50 an acre, receiving $1,500 down.

The trial court submitted the case to the jury with this instruction:

"Inasmuch as there were no specific terms as to the amount and time of payments specified in said contract, the question arises, were the terms contained in H. L. Wood's letter to the defendant a reasonable compliance with the contract? In case you find that the contract was made as claimed by the plaintiff, then the question that next faces you is this: Was the cash payment the purchaser agreed to make and were the terms

of the payments as to the balance of the purchase price, as contained in Mr. Wood's letter, such as you would say and find were reasonably contemplated by the parties and complied with the said contract?"

The jury returned a verdict for plaintiff.

1. Defendant contends that the facts proven fail to make a cause of action, that the terms agreed upon between plaintiff and defendant were too indefinite to constitute a binding contract. The contract was an unbusiness-like one, but, with some hesitation, we have decided to hold that it was a valid one. That the parties intended an agency contract is virtually conceded. The compensation was fixed. The price at which plaintiff was authorized to sell was fixed. The only uncertainty was as to the amount of the payment down, and as to the terms of payment of the balance. As to the first, the stipulation was that defendant would make easy terms, requiring only enough paid down "to secure him on the sale," and as to the second he would give five years and maybe longer, saying "we don't need the money; we just want to sell the land." It is clear that defendant intended a binding contract and intended to bind himself to pay a commission, if plaintiff should procure a purchaser willing to pay down an amount reasonably calculated to "secure him on the sale" and on terms reasonably within the limits named. Good faith on his part would seem to have required that he speak up promptly, if the details of the proposed sale were not satisfactory, to the end that they might be made so if the purchaser were so minded, before the term of the "option" expired. The payment down was much more than the amount defendant actually accepted from another purchaser to whom he gave a contract of sale on long time. A broker earns his compensation when he performs all that he undertook to perform. Goss v. Broom, 31 Minn. 484, 18 N. W. 290. The jury were justified in finding that plaintiff substantially performed his contract.

A similar principle was involved in Smith v. Keeler, 151 Ill. 518, 38 N. E. 250, where the agreement authorized the broker to sell at a certain price "payable partly in cash and partly on time." This contract was sustained, and it was held that a substantial compliance was all that was required and that a sale for one-third payable in cash, and the residue in three and five years with 6 per cent interest secured by mortgage on

the land, was within the reasonable discretion of the broker. See also Heimberger v. Rudd, 30 S. D. 289, 138 N. W. 374.

2. The letter above quoted was objected to on the ground that it was written by a stranger to the transaction. The writer was in fact writing on behalf of plaintiff, and we are of the opinion that the letter made that fact clear.

3. It was proper to permit proof of the subsequent sale of the premises by defendant and of the terms of such sale. This evidence had a tendency to show what defendant, at least, considered to be a reasonable cash payment, to "secure him on the sale" and showed, not improperly, a motive for defendant's ignoring plaintiff's negotiation.

4. An agent cannot recover compensation on a sale to himself, unless the principal, with full knowledge of all the facts, so agrees, but the parties may agree to such an arrangement. Smitz v. Leopold, 51 Minn. 455, 53 N. W. 719; Kingsley v. Wheeler, 95 Minn. 360, 104 N. W. 543; Remple v. Hopkins, 101 Minn. 3, 111 N. W. 385; Christianson v. Mille Lacs Land & Loan Co. 113 Minn. 120, 129 N. W. 150, 31 L.R.A. (N.S.) 536, Ann. Cas. 1912A, 200; Sonnesyn v. Hawbaker, 127 Minn. 15, 18, 148 N. W. 476. Complaint is made that plaintiff did not disclose to defendant the fact that the Wood Brothers had agreed to pay more than $65 an acre for the quarter section they had agreed to buy. Inasmuch as, by the terms of the agency contract, plaintiff was to have for himself all that he could obtain over $65 an acre, we see no obligation to make disclosure of the amount obtained. Nor does it seem important that plaintiff agreed to purchase half the land himself and negotiated a sale of the other half.

5. The reference in the letter to the "on or before" privilege of payment does not seem to us important. There was no stipulation to the contrary, as in Miller v. Sawbridge, 29 Minn. 442, 13 N. W. 671, or Jackson v. Badger, 35 Minn. 52, 26 N. W. 908, and we think this was within the latitude given by the agreement the parties made.

6. The assumption in the letter that defendant would furnish an abstract of title, if it can be said to be a condition of the sale, seems to us too trifling a matter to affect the validity of the transaction involving more than $20,000.

Some other exceptions are taken to the charge as given and to the refusal of the court to give certain requests to charge. The charge was a fair one and quite fully covered the case.

Order affirmed.