# A. E. (NED) BAILIE AND ANOTHER v. ISRAEL RIDKER.

81 N. W. (2d) 798.

March 8, 1957—No. 36,753.

162

*John M. Palmer* and *Mackall, Crounse, Moore, Helmey & Palmer,* for appellant.

*Samuel P. Halpern,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Plaintiffs, A. E. (Ned) Bailie and John D. Miller, real estate agents, obtained a verdict against the defendant, Israel Ridker, in

the sum of $7,500 as commission due upon their performance of an oral agreement of employment entered into with defendant March 8, 1953, under which they were to find a buyer for defendant's commercial property, located at Lowry and Penn Avenue North in Minneapolis, at a price and upon terms specified by defendant.

At the trial two special interrogatories submitted to the jury were answered as follows:

"1. Did * * * defendant * * * reach a definite and final agreement with the buyer, Walter J. Gaertner, upon * * * the terms * * * contained in the * * * earnest money contract dated April 11, 1953, * * * at the conclusion of the dictation of said document by Mr. Brill on April 11, 1953? * * * Yes. * * *

"2. Did * * * defendant employ the plaintiffs on March 8, 1953, to produce a purchaser ready, willing, and able to buy the property in question as claimed by the plaintiffs? * * * Yes."

Following such findings the jury returned a general verdict in plaintiffs' favor in the sum of $7,500.

This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial. On appeal defendant contends that (1) the evidence compels a finding that plaintiffs could not claim complete performance of the oral agreement of employment until defendant and any prospective purchaser had executed an earnest money contract embodying all terms of the sale, some of which had never been expressed by defendant; (2) defendant's liability to plaintiffs was determined upon an incorrect theory of law; (3) plaintiffs failed to sustain the burden of establishing the financial ability of the prospective purchaser to consummate the sale; and (4) the trial court erred in instructing the jury that the burden of showing the purchaser's financial inability to perform rested upon defendant.

Plaintiffs' right to recover is of course dependent upon the terms of an oral agreement of employment made with defendant on March 8, 1953. Prior thereto they had been endeavoring to sell defendant's property at a price of $200,000 with a $50,000 downpayment. Several months before, they had interested Mr. Walter J. Gaertner in the

property, but he had declined to buy at $200,000. In connection therewith, defendant had made inquiry of his attorney, Mr. Josiah Brill, as to Gaertner's financial responsibility, and Brill later advised Bailie that he had checked on Gaertner and had found him to be financially responsible and "okay."

On March 8, 1953, Bailie and defendant met at the latter's home to discuss further the sale of the property. Defendant then told Bailie that he "was very anxious to sell and that he would take $185,000 net to him" and would pay plaintiffs a commission of anything over $185,000 if they could "secure a buyer." He stated that he had had some conversations about Gaertner, and Bailie advised him that Gaertner recently had purchased other property so that Bailie did not know if he was still a prospect. Defendant then stated that he would be willing to take $20,000 downpayment if he could get $30,000 in another 90 days and the balance to be paid in 15 years or in 180 months with interest at 5 percent per annum; that on any offer a check for $5,000 earnest money should be delivered for the earnest money contract or "something in writing"—such $5,000 to form part of the $20,000 downpayment. He then submitted to Bailie a memorandum showing the tenants and the rental income of the property. Bailie testified that he told him that he "would endeavor to produce a buyer for him * * * and * * * accepted his employment to endeavor to consummate a deal for him"; that defendant did not ask him to make a sale of the property but to "produce a buyer" therefor. No further terms of the sale were discussed. Bailie understood that customary provisions relating to insurance, possession, rights of tenants, execution of an underlying first mortgage, examination of abstracts, and like items not mentioned would be negotiated by defendant and any prospective purchaser and inserted in the contract.

Bailie again called upon Gaertner. As a result, on March 10, 1953, Gaertner delivered to Bailie his personal check for $5,000 as earnest money on the purchase of the property at $192,500. On the same date Bailie and Miller called upon defendant and advised him that Gaertner was willing to pay $192,500 for the property in accordance

with the terms specified by defendant at the March 8, 1953, meeting. Bailie then tendered to defendant Gaertner's check for the $5,000 earnest money, but defendant returned it to him, stating that Bailie should retain it until they had an opportunity of going to Brill's office to draw up an earnest money contract, when the check could be delivered. Defendant then requested Bailie to ascertain if Gaertner could pay the $50,000 downpayment in one lump sum and whether the remaining balance on the contract for deed could be paid at the rate of $1,500 per month instead of in the 180 monthly installments originally provided for. Gaertner agreed to these modifications and defendant was so advised.

In the early part of April 1953, a meeting was held in Brill's office. Bailie, Gaertner, Brill, and the defendant were present. Defendant then requested that plaintiffs consent to a reduction of their commission from $7,500 to $5,000, and plaintiffs consented to this "if the deal was closed right away and the matter be disposed with." From notes taken by Brill at this meeting, a rough draft of an earnest money contract was prepared. It provided for a sale of the property by defendant to Gaertner at $192,500, with a downpayment of $50,000, and with provisions as to payments of the balance in monthly installments of $1,500 per month, with interest at the rate of 5 percent per annum. It contained the customary provisions as to delivery and examination of title, rights of tenants in possession, taxes and assessments, underlying mortgage, and prepayment privileges. It was submitted to defendant who took it with him and returned it to Brill a day or two later, then pointing out errors therein of which Brill made note.

The same parties again met in Brill's office on April 11, 1953. Defendant again demanded modifications in the terms of the sale, to all of which Gaertner consented. Pursuant thereto, Gaertner waived for five years prepayment privileges on the balance of the contract. He agreed that, in addition to the $50,000 downpayment to be paid on the purchase as a part of the purchase price, he would assume defendant's $5,000 obligation for plaintiffs' commission, so that the selling price of the property would be $187,500 net to de-

fendant. He yielded to defendant's insistence that $161,500 insurance be carried on the property, although defendant's balance after the $50,000 downpayment and $5,000 commission were credited to Gaertner would be only $137,500. He agreed that defendant have an option to place an underlying first mortgage on the property and guaranteed that his wife would join with him in executing the necessary instrument to effectuate it. He finally agreed that, if his wife should refuse to sign it when requested, he would pay defendant a penalty of $10,000. Other points of difference were discussed, and on all of them Gaertner gave his consent to modifications requested by defendant. As each term was agreed upon, Brill would dictate a memorandum of it to his secretary. After all terms had been agreed upon and the negotiations had closed, in the presence of the parties Brill dictated to his secretary an earnest money contract covering the transaction. Defendant at no time objected thereto and said nothing to indicate he had not accepted the terms thereof as agreed upon and dictated by Brill.

The parties sought to leave for lunch while the instrument was being typed and to return and sign it that day. They were advised that it could not be typed that afternoon (Saturday) but would be ready the following Monday. On Monday, April 13, 1953, Bailie called at Brill's office at 9 a. m. to pick up Gaertner's copy of the contract. He was advised by Brill's secretary that defendant had called and instructed her not to deliver a copy of the contract to him. Defendant came to Brill's office later the same morning and was given a copy of the earnest money contract with all provisions therein as agreed upon by the parties. Defendant thereupon took the papers to Mr. R. L. Davidson, head of the loan department of the Farmers & Mechanics Bank, which had made him a commitment for a loan on the property. After conferring with Davidson, defendant returned to Brill's office and advised Brill's secretary that he would not make a deal and that the papers should not be delivered. Subsequently, plaintiffs called upon defendant and demanded payment of $7,500 commission for producing the buyer. This was refused by defendant who gave no reason for his action.

Gaertner testified that on April 11, 1953, he was ready, able, and willing to purchase the property upon the terms and conditions set forth in the earnest money contract dictated by Brill and that at the time he was financially able to do so. He testified that he was the owner of real estate in Minneapolis and St. Paul, including the Belmont Hotel in Minneapolis. With respect to the $50,000 downpayment, he testified that he had $20,000 thereof in cash pursuant to defendant's original proposal; that later, when defendant had requested that the downpayment be made $50,000 in a lump sum, he had discussed the matter of a $30,000 loan with his banks, The First National and the Minnesota State of St. Paul, with whom he conducted his business regularly and with whom he had continuous financial transactions; and that he was certain from his conversation with them he could have obtained the $30,000 loan on a note without collateral because of his financial statement previously delivered to such banks.

He testified further that at the meeting of April 11, 1953, Brill's secretary had stated that she would have the earnest money contract ready Monday morning; that all parties then agreed to sign it that day; that defendant had said nothing to the effect that he reserved the right to think the matter over or to indicate in any way that he had not fully agreed upon the terms.

■ It is well settled that, under an oral employment agreement between a principal and agent wherein the principal promises to pay the agent a fixed commission if the latter procures a purchaser for the principal's real property on terms specified by the principal, when the agent produces a prospective purchaser who is ready, able, and willing to buy it on such terms but the sale is not consummated because of the principal's arbitrary and unjustified refusal to consummate it, the agent has earned and is entitled to the agreed commission. Schramsky v. Hollmichel, 233 Minn. 481, 47 N. W. (2d) 177; Lohman v. Edgewater Holding Co. 227 Minn. 40, 33 N. W. (2d) 842; Kaercher v. Schee, 189 Minn. 272, 249 N. W. 180, 88 A. L. R. 294; Huntley v. Smith, 153 Minn. 297, 190 N. W. 341.

■ Here, the terms of the agreement of March 8, 1953, were definite and complete. Thereunder, defendant promised plaintiffs a commission if the latter would procure a purchaser for defendant's property who would purchase it at a figure which would net $185,000 to the defendant. Plaintiffs' commission was to be any sum to be paid by the purchaser on such a sale in excess of that amount. The terms specified at that time by defendant were: $5,000 to be paid when the earnest money contract was signed; $15,000 to be paid upon the execution of the contract for deed; $30,000 to be paid 90 days thereafter; and the balance to be paid in equal monthly installments over a period of 180 months and to bear interest at the rate of 5 percent per annum.

That plaintiffs fully performed all of the obligations thus placed upon them by the defendant in the agreement of March 8, 1953, is clearly demonstrated by reference to the facts herein above set forth. Likewise, as there demonstrated, the sole reason for the failure of the sale to be consummated was the arbitrary and unjustified refusal of defendant to proceed therewith. It would follow that under the above authorities plaintiffs' right to the promised commission was clearly established as the jury's second special interrogatory determined.

■ Defendant asserts that the evidence compelled a finding that the agreement of March 8, 1953, required plaintiffs to consummate the sale rather than merely to produce a purchaser ready, able, and willing to purchase. In support thereof reference is made to Bailie's testimony that at the close of the conversations on March 8, 1953, he had stated that he "would endeavor to produce a buyer" for defendant and accepted his employment "to endeavor to consummate a deal for him." On cross-examination, however, Bailie testified that defendant employed him not to make a sale but told him "to secure a buyer * * * produce a buyer." On this and other evidence the issue as to the terms of this agreement was properly submitted to the jury. We cannot escape the conclusion that it amply sustains the jury's finding thereon and that it would have been error to hold as a matter of law that plaintiffs had agreed to consummate the sale.

■ Defendant urges that, because on March 8, 1953, he failed to express terms or impose conditions upon plaintiffs relating to time for delivery of abstract showing marketable title; delivery of possession; rights of tenants; insurance coverage; execution of an underlying first mortgage; and like items, the employment contract was incomplete and accordingly gave him the right to refuse to proceed with the sale at any time before the earnest money contract was signed and to thereby escape liability to plaintiffs, even though prior thereto the latter had performed each and every obligation which defendant had expressly imposed upon them as the basis for their commission. In support thereof defendant makes reference to Restatement, Agency, § 445, *comment d,* and particularly that portion thereof which sets forth that:

"When the principal has furnished the broker with only part of the terms, with the understanding that further details are subject to negotiation between the principal and the customer when found, the principal is free to terminate such negotiations without liability to the broker. The principal's promise to pay the broker a commission does not become binding *unless the principal and the customer reach a present definitive oral or written agreement.* The broker has not earned his commission, even though the principal and the customer have drafted a memorandum of their proposed agreement, *if they did not intend such proposed agreement to be presently binding* upon them and hence reserved signature of the memorandum for a later occasion; * * *." (Italics supplied.)

We do not feel that there is anything in the principles thus expressed which bars plaintiffs' recovery here. Assuming that defendant's contention is correct that defendant did not give all terms of the sale to plaintiffs, the evidence would amply support the jury's finding that all terms were ultimately agreed upon between defendant and Gaertner and that they reached a definite final agreement April 11, 1953. This would bring the facts within the provisions of Restatement, Agency, § 445, *comment d,* which provides in part:

"Both in the case where the principal gives the broker all his terms and where he gives him only part of the terms, *if the principal*

*and the customer reach an agreement which, although definite, is not binding because it is oral, the principal is subject to liability to the broker if the customer is ready and willing to perform at the time fixed for consummation of the transaction; after the oral contract has been made the principal cannot avoid payment to the broker by refusing to perform it."*[1] (Italics supplied.)

Further, if on March 8, 1953, defendant specified only part of the terms upon which he would sell the property, there is nothing to indicate that plaintiffs were not justified in assuming that all terms which defendant regarded as essential had been expressed; and that the responsibility for settlement of customary details as to title, possession, and like items was to be defendant's. It would follow that, when plaintiffs had produced a purchaser who was ready, able, and willing to purchase on the terms which defendant had *actually expressed,* the performance of their part of the agreement became complete. Edmundson v. Phenix, 146 Minn. 331, 178 N. W. 893; Goss v. Broom, 31 Minn. 484, 18 N. W. 290.

■ Defendant urges further that the evidence compelled a finding that at the close of the negotiations on April 11, 1953, none of the parties intended that the agreement was to be binding until the earnest money contract was signed the following Monday. The jury found contrary to defendant's contention on this issue. Aside from the fact that defendant may not have been obligated to Gaertner until the written contract was executed, it is clear that the evidence amply supports a finding that, when the negotiations ended on April 11, 1953, plaintiffs had completed performance of their part of the agreement of March 8, 1953, and thus earned their commission. Edmundson v. Phenix, 146 Minn. 331, 178 N. W. 893.

In any event, the evidence would seem to establish that on April 11, 1953, defendant and Gaertner had reached agreement on all terms of the sale. Defendant had instructed Bailie to be at Brill's office on April 11, 1953, for the purpose of closing the deal. Gaertner testified that all parties manifested their intent to sign the earnest money contract as soon as it was typed on that Saturday, but that, because

---

[1] See, Restatement, Agency, § 445, *illustrations* 2 and 4.

Brill's secretary could not complete it on that day, the signing was to be delayed until the following Monday; and that defendant expressed no desire to wait further or to take additional time to consider the matter of the sale. All modifications of the previous terms had been made at defendant's request, and, for the most part, were concessions to him. As soon as agreements thereon had been reached, the terms thereof were promptly dictated. It is manifest that the evidence amply supports the jury's special finding on this issue and that it would have been error for the court to charge that, as a matter of law, the parties had not reached an agreement at that time. Lohman v. Edgewater Holding Co. 227 Minn. 40, 33 N. W. (2d) 842; Meiners v. Kennedy, 221 Minn. 6, 20 N. W. (2d) 539; Kaercher v. Schee, 189 Minn. 272, 249 N. W. 180, 88 A. L. R. 294; Restatement, Agency, § 445.

■ Defendant contends the trial court erred in instructing the jury that the burden of proving Gaertner's financial inability to consummate the sale rested upon defendant. He concedes that there is a presumption of financial solvency (Grosse v. Cooley, 43 Minn. 188, 45 N. W. 15; Sherwood v. Rosenstein, 179 Minn. 42, 228 N. W. 339; Horrigan v. Saeks, 187 Minn. 115, 244 N. W. 545), but argues that affirmative evidence which established that Gaertner would be required to borrow $30,000 to consummate the sale and had no commitment therefor rebutted the presumption so as to place the burden of this issue upon plaintiffs. However, evidence that a prospective purchaser with substantial assets is required to borrow part of a required downpayment is not of itself affirmative evidence of his financial inability to consummate the contemplated purchase so that thereby the presumption described must disappear. Shell Oil Co. v. Kapler, 235 Minn. 292, 298, 50 N. W. (2d) 707, 712. Further, it has repeatedly been held that, where a vendor has accepted a purchaser by entering into a contract of sale with him, he cannot thereafter question the purchaser's capacity to complete the transaction except in cases involving fraud or bad faith. Fulsom v. Egner, 248 Minn. 156, 79 N. W. (2d) 25; Hare v. Bauer, 223 Minn. 285, 26 N. W. (2d) 359; Martinson v. Hensler, 132 Minn. 437, 157 N. W. 714, 991. Here,

after his attorney had passed upon Gaertner's financial ability to make the purchase, not only did defendant suggest to plaintiffs that Gaertner was acceptable to him, but, as the jury determined, actually entered into an oral agreement with him on April 11, 1953, for the sale of the property. Having raised no question as to Gaertner's responsibility up to this time, it would appear that the rule expressed above is clearly applicable. Lohman v. Edgewater Holding Co. 227 Minn. 40, 33 N. W. (2d) 842. It would follow that the error, if any, in the instruction complained of was harmless. Our conclusion is strengthened by the persuasive evidence presented as to Gaertner's substantial financial responsibility.

■ Defendant asserts that the verdict of $7,500 is inconsistent with the theory upon which plaintiffs have established their case, and, if anything, the verdict should have been for $5,000, the amount agreed upon if the sale was consummated. Plaintiffs consented to the reduction of their commission to $5,000 upon condition that the transaction be promptly closed. This was in the first part of April 1953. By April 11, 1953, they had completed performance of their part of the agreement. Defendant's refusal to proceed after agreement with Gaertner had been reached, followed by this extended litigation, makes clear that the condition upon which plaintiffs had agreed to the reduction at no time became effective, and it would follow therefore that they were entitled to the amount originally agreed upon.

■ Defendant assigns as error a number of instructions given and the refusal to give certain requested instructions. We have read the court's charge with extreme care. We feel that it adequately and clearly expresses the applicable law so that the jury had the opportunity of fairly and intelligently passing upon all the issues. To discuss each of the assignments of error separately would prolong this opinion unduly. We affirm the trial court's conclusion that defendant "had a fair trial and that the appropriate issues were properly submitted to the jury under correct statement of the rules of the law involved."

Affirmed.