JOE SCHRAMSKY v. ANNA HOLLMICHEL.[1]

April 6, 1951.

No. 35,303.

*Gallagher, Farrish & Sheran,* for appellant.
*Wilson, Blethen & Ogle,* for respondent.

CHRISTIANSON, JUSTICE.

Action by a real estate broker to recover a commission alleged to be due under an agency to sell real estate. The jury returned a verdict for plaintiff. Defendant appeals from the denial of her motion for judgment notwithstanding the verdict or a new trial.

The defendant, Anna Hollmichel, is a widow in her sixties. At the time herein material she owned a 156-acre farm in Waseca county. In the fall of 1947, she sold this farm to one Floyd Butler under a contract for deed. Butler defaulted, and the contract for deed was cancelled. His rights under the contract terminated on December 19, 1948. However, he refused to vacate the premises, claiming that he was entitled to possession for the 1949 farming season by reason of an alleged oral rental agreement. Because of his refusal to vacate, defendant was forced to bring an unlawful detainer action for his removal. Prior to the completion of the can-

[1]Reported in 47 N. W. (2d) 177.

cellation proceedings, Butler attempted to sell the farm and engaged one Lou Converse to find a purchaser. Converse showed the farm to one Reuben Johnson in May 1948, but no sale was made. Butler also asked plaintiff to try to sell the farm for him, but plaintiff did not succeed in doing so. In the latter part of 1948, plaintiff approached defendant and offered to list the farm for her. By asking to list the farm, plaintiff testified that he meant he wanted an exclusive agency to sell the farm. He said defendant told him that she would not list the farm with anybody, but that "She said *the first man to sell it would get the commission* on the farm." (Italics supplied.) Plaintiff then said that "that's fair enough, I will go ahead and work on it." Plaintiff also testified: "The price was $21,000.00." "She wanted me to get at least $20,000.00 clear, she figured." "She said if Johnson buys it I would have my commission on this, *if he buys it.*" (Italics supplied.)

Defendant testified:

"Well, I told him to go ahead and sell my farm whenever I was free to sell it, but at that time I wasn't free to sell the farm, but I did want him to look around for a fellow to buy my farm. I agreed upon *if he would sell my farm after I had Butler off of there that I would pay him his commission."* (Italics supplied.)

She testified further that she was to get $20,000 net without any expenses.

It is conceded by both parties that on January 17, 1949, plaintiff took Reuben Johnson to defendant's home to buy the farm and that at that time Johnson was ready and able to purchase the farm for $21,000 on terms agreeable to defendant provided he could get possession of the farm by March 1, 1949. While plaintiff, defendant, and Johnson were at defendant's home they discussed the bargain that they would make. They agreed on a price of $21,000, with $10,000 or $11,000 to be paid down and the remainder to be paid in installments of at least $350 a year on principal, with interest at three percent. Defendant later agreed to pay the taxes for 1949, but it is not clear just when this agreement was reached. After these negotiations, plaintiff, defendant, and Johnson drove to Man-

kato to see defendant's attorney, Miss Farrish. There is some conflict in the testimony as to what occurred at Miss Farrish's office, but it is conceded by both parties that Miss Farrish refused to draw up a contract of sale at that time, and that she advised defendant not to sell the farm until the unlawful detainer action against Butler was determined and they were certain that they could obtain possession of the farm. Johnson and defendant also testified that Miss Farrish mentioned that there might be some difficulty in determining who would be entitled to a commission for selling the farm, since both plaintiff and Converse were claiming the commission if the sale was made. Johnson stated that he would not buy the farm unless he could get possession for spring work. Furthermore, he said that he did not want to have any trouble about who was to receive the commission for the sale of the farm. Plaintiff testified that Miss Farrish advised them to wait until the lawsuit with Butler was over, and they all said, "All right."

As to what happened after the parties left Miss Farrish's office, plaintiff testified as follows:

"We drove home, we talked about different things, and I said to Mrs. Hollmichel when we got just about up to the house, I said you want to sell your farm, don't you? She said yes. I said the man will give you $21,000.00. She said yes, I know. I said he will buy it, *there will be no backing out or failing to go through with it.* Then I said now have you got the selling of the farm or have you given it to Miss Farrish to take care of any business. She said I have the farm, I can sell it, I am taking care of it. I said Miss Farrish is working for you as an attorney? She said yes. She said if you want to make a deal let's go in the house, we can't do it out in the car. I said it's up to you." (Italics supplied.)

Plaintiff then wrote out a check for $500 payable to defendant. Johnson signed it and gave it to defendant. It was agreed that if defendant could not get possession of the farm from Butler by spring, the deal would be off and the check would be torn up. No written memorandum was made of their agreement. Although much of the evidence of what happened thereafter was objected to

by plaintiff and excluded by the trial court, the record does disclose that Butler did vacate the farm; that Johnson never took possession; that no written contract was ever executed; that the $500 check was never cashed and was returned to Johnson; and that the sale was never consummated.

After both parties had rested, defendant moved for a directed verdict on the ground that it conclusively appeared from the evidence that plaintiff had failed to comply with the terms of his agency agreement with defendant and accordingly had not shown that he was entitled to a commission.

Defendant sets forth in her brief numerous assignments of error relating to the trial court's rulings on evidence and instructions to the jury. However, we find it necessary to consider only the assignments covering the denial of defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

It is well settled that a broker is entitled to his commission when he has performed all that he undertook to perform, and this necessarily depends upon the agreement of the parties. 1 Dunnell, Dig. & Supp. § 1147, and cases there cited. Since plaintiff is obviously entitled to recover his commission if he has fully performed his agency contract, the question for decision is what plaintiff agreed to do to earn his commission; or, more accurately, the extent of performance which plaintiff and defendant agreed would be necessary to entitle plaintiff to a commission. Was plaintiff merely to produce a purchaser, or was he to consummate a sale of the farm?

On this question, we can take plaintiff's own testimony that "She [defendant] said the first man to sell it would get the commission on the farm"; that "She wanted me to get at least $20,000.00 clear, she figured"; and that "She said *if Johnson buys it* I would have my commission on this, *if he buys it.*" (Italics supplied.) This and defendant's testimony[2] is the only evidence as to the nature of

[2]Defendant testified: "I agreed * * * *if he would sell my farm after I had Butler off of there that I would pay him his commission,*" and that "My price was $20,000.00 without any expenses." "I wanted my $20,000.00, that is all." (Italics supplied.)

Where the commission is to be everything over a specified net price to the principal, a broker is not entitled to a commission if, because of his

plaintiff's agency contract. The testimony of both parties shows that the agreement was to pay the commission when and if the farm was sold. Plaintiff's own testimony negatives his claim that he was merely to produce a purchaser for defendant's farm.

In Appleby v. Dysinger, 137 Minn. 382, 383, 163 N. W. 739, 740, a broker procured the execution of a written contract between his principal and a third party for an exchange of properties. Because the contract was not performed and was unenforceable, this court denied the broker's claim for a commission. There, the commission was conditioned in the following language: "If the deal went through?" "That was the condition, of the deal finally going through and finally accepted?" That language is only slightly stronger than plaintiff's testimony that "She [defendant] said if Johnson buys it I would have my commission on this, *if he buys it.*" (Italics supplied.) And plaintiff's later assurance to defendant that "there will be no backing out or failing to go through with it" at the time Johnson's $500 check was turned over to defendant. In the Appleby case, this court held as a matter of law that the broker was entitled to a commission only if an exchange of properties was actually consummated.

In Jacobson v. Rotzien, 111 Minn. 527, 528, 127 N. W. 419, 420, 856, the commission contract read:

"I, the undersigned, agree to pay to Jacob Jacobson the regular Minneapolis board rate of commission on my property if he shall in any way be instrumental in effecting a sale or trade of my property."

The broker secured a written contract for exchange of the property between the principals and a willing third party. The contract had an option provision, and the defendant principals declined to go

customer's default, a sale is not consummated. Martinson v. Hensler, 132 Minn. 437, 157 N. W. 714, 991. However, it has been held generally that a broker is entitled to compensation where his contract calls for a net price or entitles him to all above a specified price and where the sale is not consummated because of unjustifiable refusal or fault of the principal. Kaercher v. Schee, 189 Minn. 272, 249 N. W. 180, 88 A. L. R. 294; see, Annotation, 144 A. L. R. 921, and cases there cited.

ahead with the contract. There, the broker found a willing purchaser and procured a contract enforceable against the latter, but not enforceable against the defendants. In holding that the commission had not been earned, this court stated (111 Minn. 530, 127 N. W. 420):

"* * * No sale or trade having been effected, and the evidence failing to show that the failure was because of a wrongful refusal upon defendants' part, the plaintiff was not shown to have earned his commission."

In Yeager v. Kelsey, 46 Minn. 402, 49 N. W. 199,[3] the principal authorized the broker "to sell" certain real estate for a specified price and agreed to pay a stated percentage thereof as his commission. The broker executed an unenforceable contract for the sale of the land and took $500 earnest money from the prospective purchaser. This court, in affirming a denial of the broker's claim for commission, held that, since the purchaser refused to accept a deed of conveyance from the owner and the broker had not obtained an enforceable contract, no sale had been made and that the broker was not entitled to compensation.

Where, as here, a broker's right to compensation is conditioned upon the actual consummation of the contract negotiated, it is incumbent upon him to show that such condition has been complied with. 8 Am. Jur., Brokers, § 222. See, Annotation, 12 A. L. R. (2d) 1410, 1423. This plaintiff failed to do. Moreover, the record does not disclose that Johnson, plaintiff's customer, was ready, *willing,* and able to purchase the farm when defendant was in a position to sell and deliver possession to him, or that the sale was not consummated because of refusal or fault of defendant.

Plaintiff did a considerable amount of work in attempting to sell the farm to Johnson, and it is unfortunate that the sale was not consummated. However, admittedly he contracted to sell the farm for defendant, and, having failed to show that the sale was

---

[3]Overruled on another point in Western Land Assn. v. Banks, 80 Minn. 317, 83 N. W. 192.

not consummated through the fault of defendant, he is not entitled to recover his broker's commission.

The order of the trial court is reversed with directions to enter judgment for defendant.

Reversed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.