## GOPHER STATE BUSINESS OPPORTUNITIES, INC. v. ALEX STOCKMAN AND ANOTHER.

121 N. W. (2d) 613.

March 29, 1963—No. 38,683.

*Halpern & Abrahamson,* for appellant.
*John R. Kelly,* for respondents.

NELSON, JUSTICE.

This appeal involves an action for the recovery of a commission of $3,500 for broker's services growing out of negotiations for the sale of certain real property.

Plaintiff is a Minnesota corporation engaged in the real estate broker-

age business under the laws of this state. Defendants, owners of a hotel and tract of land in Erskine, Minnesota, signed a listing agreement with plaintiff on June 11, 1960. About December 13, 1960, plaintiff procured a signed purchase agreement from John H. Butzon and Mildred C. Butzon, his wife, as buyers, and presented it to defendants together with a certified check for $1,000 payable to them, and requested that they sign the agreement. Defendants refused to sign and returned the purchase agreement and the check to plaintiff.

The listing agreement contained information about the hotel and its equipment, location, and general business operations. It also provided:

"Price: $22,000.00 Net to Seller. Anything over $22,000.00 goes to Broker, Gopher State Business Opportunities.

"Down Payment $3,000.00. Bal. Payable Carry $200.00 5% contract for deed."

The purchase agreement which plaintiff procured from Mr. and Mrs. Butzon provided that plaintiff—

"* * * as agent for the owner, has this day sold to the buyer for the sum of Twenty-five Thousand Five Hundred Dollars ($25,500.00) DOLLARS, which the buyer agrees to pay in the following manner:

"Earnest money herein paid $1,000.00 and $2,000.00, cash, on or before January 10, 1961;

"$3,500.00, by Buyers executing and delivering their personal promissory note in said amount, payable to sellers, payable at the rate of $500.00, together with, interest at the rate of five per cent (5%) per annum on July 10, 1961, January 10 and July 10, 1962, January 10 and July 10, 1963, and January 10 and July 10, 1964; undersigned agent hereby agrees to accept such note properly endorsed without recourse from Sellers as and for its commission and compensation in effecting the within sale; and

"$19,000.00, the balance of said purchase price, by Buyers and Sellers executing a Contract for Deed in said amount, dated January 10, 1961, payable $200.00 or more, together with interest on the unpaid principal balance thereof at the rate of five per cent (5%) per annum, per month, the first such payment to be due and payable thirty days

after the closing of this transaction on January 10, 1961, and each payment to be made on the 10th day of each succeeding month thereafter until the entire amount of such principal and interest shall be paid in full."

In its complaint plaintiff alleged that it performed the services undertaken by it in the listing agreement. Defendants denied plaintiff's claim, contending that plaintiff did not produce buyers who were ready, willing, and able to purchase the property on the terms and conditions contained in that agreement. Defendants also put in issue the buyers' financial ability because of their failure to make the downpayment required in the listing agreement.

With respect to the purchasers' financial ability the evidence showed that Mr. Butzon is a railroad engineer with an earning capacity between $10,000 and $11,000 per year and owns a home conservatively worth $9,000. There was further evidence that he had been with the railroad some 35 years and was interested in retiring. It was also brought out that he is the father-in-law of Arthur K. Wurdemann, president of plaintiff, and is an incorporator, a director, and vice president of the corporation.

Defendants moved for a directed verdict at the close of the testimony on the ground that the purchase agreement submitted to them did not constitute an acceptance of the listing agreement and did not comply with it. The court denied the motion. It also denied a similar motion by plaintiff. The trial court then charged the jury that plaintiff was as a matter of law entitled to recover its claimed commission if it had produced purchasers ready, willing, and able to purchase the property on the terms fixed by defendants and they had arbitrarily refused to make a sale to such purchasers. The court further charged that plaintiff had produced purchasers ready and willing to purchase the property described in the listing agreement and that the only question to be determined was whether they were able to purchase the property.

The jury thereafter returned a verdict for defendants. Plaintiff then moved for judgment notwithstanding the verdict or for a new trial. The court denied this motion and in a memorandum made a part of its order stated:

"Furthermore, it would appear that the court was in error in not granting defendants' motion for a directed verdict in their favor. The listing contracts, Exhibits 1 and 2, called for a down payment of $3,000, and there is no evidence in the case which would justify a finding that defendants ever agreed to change that condition. Unless and until plaintiff produced a purchaser with a $3,000 down payment who was ready, able and willing to purchase on defendants' terms as set forth in the contracts, it would seem that plaintiff had not earned its commission and has no cause of action."[1]

We are satisfied that the fact questions submitted were properly presented to the jury for their determination and that there was ample support in the record for the verdict which the jury returned.

 We agree with the trial court that it was in error in not granting defendants' motion for a directed verdict. A simple comparison of the listing agreement and the purchase agreement submitted to defendants indicates that the terms of sale proposed in the latter were significantly different from those required by the listing agreement. The purchase agreement provided for a downpayment of $1,000 and another payment of $2,000 on or before January 10, 1961, while the listing agreement required a downpayment of $3,000. The purchase agreement also provided that the buyers should execute and deliver their personal promissory note to the sellers for $3,500, payable at the rate of $500 semiannually with 5-percent interest and that plaintiff, in lieu of its commission, should accept said note when endorsed without recourse. Defendants had made no commitments in the listing agreement to pay plaintiff's commission in that manner. Since the terms of sale proposed in the purchase agreement did not comply with those required by the listing agreement, plaintiff has earned no commission and defendants were entitled to a directed verdict.

In view of this conclusion, plaintiff's contentions that the trial court erred in denying its motions for a directed verdict and for judgment

---

[1]Exhibit 1 was the formal printed listing agreement signed by the parties; exhibit 2 was an informal version of the agreement subsequently written by plaintiff's president for defendants' convenience.

notwithstanding the verdict or a new trial, and in refusing to give certain requested instructions, do not require consideration.

■ This case furnishes a clear example of a situation where a new trial ought not to be granted, even where there is error, if from the whole case it is apparent that the result will not be changed. See, 14 Dunnell, Dig. (3 ed.) § 7074, and cases cited under note 54.

Defendants, having failed to file a brief, are denied their costs on appeal.

Affirmed.

OTIS, JUSTICE (dissenting).

I dissent. In my opinion, it was error to submit to the jury the question of whether the buyers produced by plaintiff were *able* to purchase defendants' property. There was no evidence that the proposed purchasers did not have the resources necessary to consummate the sale. On the contrary, there was uncontroverted testimony that they had ample means to do so.

Nor do I find any variance between the listing contract and the purchase agreement. The former provides for a "downpayment" of $3,000 and authorizes the acceptance of a "deposit." The purchase agreement merely divides the downpayment between an earnest money deposit of $1,000, due on December 13, 1960, and a payment in cash of $2,000, due on January 10, 1961. I fail to discern any departure from the listing agreement in these arrangements. Apparently defendants were unable to find any inconsistency either. Nowhere in the record is there any indication of their reason for refusing to sell except testimony that they wanted to meet the buyers, and insisted on a downpayment substantially in excess of the $3,000 called for in the listing contract.

In my opinion the plaintiff's right to recover is cogently demonstrated by the testimony of defendant Alex Stockman, elicited by his own counsel, as follows:

"Q. Did Mr. Wurdemann ever talk to you about Mr. Butzon's financial condition?

"A. Yes, he was supposed to be pretty well off and all that, but he

190

didn't have much to offer for our place and I couldn't accept the small down payment, and he had a $16,000 home, and I said, 'If he wants the place he can trade his home on the place and the deal is on', but he didn't want to pay down more than $4,000, and I couldn't accept that."

I would reverse.