Thomas O. MILLER et al., Appellants,

v.

Preston DOUGHTY et al., Appellees.

No. 919.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 27, 1975.

Rehearing Denied March 31, 1975.

Milton W. Walton, Corpus Christi, for appellants.

Charles R. Porter, Jr., Porter, Taylor, Gonzalez, Thompson & Rogers, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a suit for declaratory judgment. Preston Doughty and Roy Doughty sued Kenneth L. Bennight, Thomas O. Miller, O. A. Prather, Jr. and Fred R. Wade wherein they sought a judgment declaring that the defendants were each bound by the terms and provisions of a certain contract of sale of an accounting practice, dated July 18, 1966, which was executed by them, as sellers, and by Kenneth L. Bennight and William A. Southerland, as purchasers. An interlocutory judgment in favor of plaintiffs against Kenneth L. Bennight, who admitted that he was bound by the contract of sale, was entered prior to commencement of trial before a jury. The interlocutory judgment was made final by the terms and provisions of the final judgment. A jury was impaneled and at the conclusion of the evidence plaintiffs told the court that they had no issues to be presented to the jury. Defendants made a like announcement. The trial court then discharged the jury, took the case under advisement, and rendered judgment favorable to plaintiffs. The defendants Thomas O. Miller, O. A. Prather, Jr. and Fred R. Wade have appealed. Kenneth L. Bennight did not appeal. The Doughtys will be referred to as "plaintiffs" and the defendants Miller, Prather and Wade will be referred to as "defendants". The defendant Bennight will be referred to by name.

Plaintiffs, among other allegations, alleged in their trial petition: 1) that they, by a written contract of sale dated July 18, 1966, sold their respective interests in an accounting partnership to Kenneth L. Bennight and William A. Southerland, who agreed to pay each of them $75,150.00 out of 5% of the gross accounting and related fees received by the purchasers from the practice, payments to be made monthly, with the first payment becoming due and payable on July 1, 1967 and continuing thereafter until June 30, 1979 or until the full sum had been paid to plaintiffs, whichever was first in time; 2) that subsequently, Miller, Prather and Wade each purchased an interest in the partnership and assumed the obligations to plaintiffs under the contract; and, 3) that Bennight and the defendants paid plaintiffs all moneys due them under the contract through July, 1972, but repudiated the provisions of the contract on August 1, 1972.

Plaintiffs, in their prayer, asked for a declaratory judgment "declaring the rights of plaintiffs each to continue, until June 30, 1979, or until the sums alleged hereinabove are paid, receiving five percent (5%) [total of ten percent (10%)] of gross accounting and related fees earned by each of said defendants so long as said defendants or any of them practice as a certified public accountant in . . .", and for general relief.

The trial court made certain findings of fact in the judgment. Included therein are findings; 1) that the defendants purchased an interest in the accounting partnership of Bennight and Southerland, became a partner of Bennight, and thereafter made payments to plaintiffs of 10% of the gross accounting and related fees earned by the partnership composed of Bennight and defendants; 2) that the defendants were admitted into an existing partnership when the existing partnership was indebted to plaintiffs under the provisions of the July 18, 1966 contract; and 3) that as of February 13, 1974, the remaining balance due plaintiffs from 10% of the gross accounting fees pursuant to the contract was $68,367.20.

The final judgment of the trial court decreed that the defendants are and have been bound by the terms and provisions of the July 18, 1966 contract since the day of their admission into the Bennight partnership as partners therein, and that Bennight and each of the defendants are contractually obligated to pay to plaintiffs, jointly, the total sum of 10% of the gross accounting and related fees earned by them "from and since the 1st day of August, 1972" until the remaining balance owed plaintiffs has been paid, or until June 30, 1979, if such sum is not sooner paid.

Defendants' contentions that the contract of sale and the other documents in evidence are ambiguous and the trial court erred in rendering judgment for plaintiffs because they failed to secure jury findings or conclusively prove as a matter of law that defendants purchased an interest in the accounting practice sold on July 18, 1966 to Bennight and Southerland have no merit. The contract of sale and all documents in evidence are clear and unambiguous. Therefore, the construction of the documents became a question of law for the trial court. Nyers v. Gulf Coast Minerals Management Corporation, 361 S.W.2d 193 (Tex.Sup.1962); 13 Tex.Jur.2d Contracts, § 110. Furthermore, defendants did not plead ambiguity which must be specially plead if a person seeks to establish ambiguity in a written instrument. Anderson-Dunham, Inc. v. Lee Rubber & Tire Corporation, 378 S.W.2d 99 (Tex.Civ. App.—Dallas 1964, writ ref'd n.r.e.); Skyline Furniture, Inc. v. Gifford, 433 S. W.2d 950 (Tex.Civ.App.—El Paso 1968, no writ); 13 Tex.Jur.2d, Contracts, § 373.

Defendants' further contention that plaintiffs are estopped to claim that defendants are bound by the terms and provisions of the contract of sale cannot be sustained. Assuming, without deciding, that defendants' pleadings are sufficient to raise the affirmative defense of estoppel,

none of the essential elements of estoppel, which are set out in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952), were proved by defendants. See also Barfield v. Howard M. Smith Company of Amarillo, 426 S.W.2d 834 (Tex.Sup.1968).

Prior to July 18, 1966, an accounting partnership practice was conducted by Preston Doughty, Roy Doughty, Kenneth L. Bennight and William A. Southerland, under the firm name of "Doughty & Company Certified Public Accountants". As of July 18, 1966 (before the sale), the capital account of each plaintiff in the partnership, after certain cash withdrawals were made, was stated to be $94,443.34. On July 18, 1966, plaintiffs, by a written contract of sale, sold their respective interests in the partnership to Bennight and Southerland. The old firm was dissolved, and the new partnership "Doughty, Bennight & Southerland", composed solely of Bennight and Southerland was formed. The money consideration for the sale to the new partnership was: 1) the execution and delivery by Bennight and Southerland to each plaintiff of their promissory note in the principal sum of $19,293.34, payable on June 1, 1967, without interest; and 2) the agreement to pay each plaintiff the further sum of $75,150.00, to be paid out of 5% of gross accounting and related fees received from the practice of accounting. The payments were to be made monthly, with the first payment becoming due and payable on July 1, 1967, and continuing thereafter until June 30, 1979, or until the stated sum had been paid to each plaintiff, whichever occurred first. The contract further provided that failure of the purchasers to meet the obligations therein set out as they became due and payable shall cause the ownership of the said professional practice to revert to those partners previously owning the same. It was also provided that if either Bennight or Southerland desired to sell his interest in the new partnership before the obligations to plaintiffs were discharged, that the selling partner shall require the purchaser to assume the obligations to plaintiffs, and failure of such purchaser "to assume and pay the said notes as the same become due and payable shall cause the interest and ownership in the new partnership to revert to those original partners". It was also agreed that neither Bennight nor Southerland would sell his interest in the new partnership without the written consent of plaintiffs until the obligations due them had been discharged.

A partnership agreement was executed on November 1, 1967 by and between Bennight, Southerland and defendants, whereby defendants were admitted as partners into the partnership theretofore existing between Bennight and Southerland. It was agreed by all parties "to continue the aforementioned partnership professional accounting practice" under the same firm name of "Doughty, Bennight & Southerland". The agreement denominated the interests of Bennight and Southerland in the accounting practice as "goodwill"; such interest was fixed at 68.5% for Bennight, and 31.5% for Southerland. These percentages were to continue until "the time the obligations to Preston Doughty and Roy Doughty are satisfied", when 90% of the "goodwill" was to be re-apportioned among the partners in accordance with the primary profit distribution ratio therein set out. The re-apportionment was not to be treated as a sale. Profits from the accounting practice, and from the realization of assets acquired after November 1, 1967, were to be shared annually, as follows: of the first $65,000.00 profits (the primary profit distribution) $20,000.00 was to be paid to Bennight, $15,000.00 was to be paid to Southerland, and $10,000.00 was to be paid to each defendant; all profits in excess of $65,000.00 were to be distributed: Bennight, 41%; Southerland 26%; defendants, 11% each. The partnership obligation to each plaintiff was expressly recognized as is shown by the following excerpt from the partnership agreement, to-wit:

"Until the obligations to Preston Doughty and Roy Doughty are paid in full, the

ownership of investments and profits and losses (except as provided for in Article IV) by Thomas O. Miller, O. A. Prather, Jr., and Fred R. Wade shall be limited to the sharing of profits and losses of the partnership and ownership of a portion of the accounts receivable."

The agreement further recited:

"The parties hereto have made capital contributions and are the owners of equities represented by their capital accounts."

It was also stated that the agreement shall not in any way alter the contract whereby the accounting practice was sold by plaintiffs to Bennight and Southerland. It was expressly stipulated that the July 18, 1966 contract of sale shall "continue in full force and effect and take precedence over any paragraph or article herein which may seem to contradict any part of that agreement."

William A. Southerland later withdrew from the partnership. A written settlement agreement, dated October 11, 1968, was signed by Bennight, Southerland and defendants. Paragraph 3 thereof contained the following language:

"Bennight, Wade, Miller and Prather agree to assign, transfer, pay and deliver to Southerland for his interest in the partnership and all of its assets. . . . "

It was further stated in the settlement agreement that the remaining partners were entitled to continue the partnership at their option without terminating such partnership, and that Bennight and defendants *assume* all of the liability of William A. Southerland on all debts, liabilities and obligations of the partnership.

Plaintiffs entered into a written agreement with Southerland, dated October 14, 1968, which recited that Southerland, in lieu of his obligations still due plaintiffs under the July 18, 1966 contract, would pay plaintiffs $12,000.00, as follows: $1,500.00 in cash and the further sum $10,500.00, evidenced by a note for said amount, payable as therein stipulated. Plaintiffs released Southerland from all remaining liability and obligation under the July 18, 1966 contract.

Also, on October 14, 1968, plaintiffs, Bennight and defendants entered into a written agreement which referred to and incorporated therein as a part thereof both the July 18, 1966 contract of sale and the aforesaid settlement agreement between plaintiffs and Southerland. Bennight and defendants were required to guarantee the payment of the Southerland note to plaintiffs. In return, plaintiffs reduced the balance due them under the July 18, 1966 contract by $17,000.00.

Following the withdrawal from the firm by Southerland, new "articles of partnership", dated November 1, 1968, were executed by Bennight and the defendants. The articles made the July 18, 1966 contract a part thereof and referred to the partnership of Bennight and Southerland that was entered into by them "to own and operate the accounting practice purchased from Roy Doughty and Preston Doughty", and also made reference to the November 1, 1967 partnership agreement, which continued "such partnership under the same name and at the same location". The following paragraph appears in the preamble to such articles:

"Whereas by instrument dated October 11, 1968, William A. Southerland withdrew from the partnership, and the parties to this agreement *purchased* the interest of William A. Southerland and have continued such partnership at the same location but under a different name (Doughty, Bennight, Miller, Prather and Wade) and desire to enter into the following agreement as to the *continuing operation of the partnership*." (Emphasis supplied.)

Bennight testified that he *sold* each defendant 2% of the profit sharing ratio of the partnership, and that Miller, Prather and Wade each paid him $3,000.00 therefor.

The two notes, each in the principal amount of $19,293.34, executed by Bennight and Southerland, and payable to plaintiffs as part of the purchase price for the accounting practice were timely paid. Prather and Miller were employees of "Doughty & Company, Certified Public Accountants" when the partnership accounting practice was sold by plaintiffs to Bennight and Southerland. Wade was employed by the firm in August, 1967. Each of the defendants had knowledge of the July 18, 1966 contract and were familiar with its terms before they were admitted into the partnership of Doughty, Bennight & Southerland. Bennight left the partnership in August, 1972. Defendants, by a letter dated September 1, 1972, notified their clients that "effective August 31, 1972, the accounting firm of Bennight, Miller, Prather and Wade" was dissolved, and that they would practice accounting thereafter under the firm name of "Miller, Prather & Wade". Bennight has practiced accounting separately from Miller, Prather & Wade since September 1, 1972. A substantial number of clients of "Miller, Prather & Wade" were former clients of "Doughty & Company, Certified Public Accountants", and of "Doughty, Bennight & Southerland".

Payments of 10% of the gross receipts from the accounting practice of both "Doughty, Bennight & Southerland" and of "Bennight, Miller, Prather & Wade" were paid regularly to plaintiffs until August 1, 1972. No payments were made to them subsequent to that date.

■ Defendants, having been admitted as partners into the *existing* partnership of "Doughty, Bennight & Southerland" on November 1, 1967, became bound by all partnership obligations then outstanding, the same as though they had been partners when such obligations were initially incurred, except that their liability as to unpaid obligations existing at the time of their admission could be satisfied only out of partnership property. Vernon's Tex. Rev.Civ.Stat.Ann. art. 6132b, § 17 (1962).

■ Unquestionably, defendants received and accepted benefits under the July 18, 1966 contract. It is well settled that a person who accepts benefits of a contract must also assume its burdens. Daniel v. Goesl, 341 S.W.2d 892 (Tex.Sup.1960); Sanchez v. Leggett, 463 S.W.2d 517 (Tex. Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.).

■ It is conclusively established by the evidence that each of the defendants, prior to August 1, 1972, purchased interests in the partnership of "Doughty, Bennight & Southerland", and assumed the obligations of that partnership. The "partnership agreement" between Bennight, Southerland and defendants, dated November 1, 1967, recites that the parties had *made* capital contributions and were the *owners* of equities in the capital accounts. "Capital contributions" implies a purchase. The "Articles of Partnership", dated November 1, 1968, executed by Bennight and by defendants, expressly state that all parties thereto *purchased* the interest of Southerland in the partnership. The settlement agreement with Southerland, which was signed by all partners, including defendants, stated that Bennight and defendants *assumed* all of Southerland's liabilities. The "ownership" of each defendant in the partnership was raised from 11% to 20% as a result of the purchase of Southerland's interest. Bennight testified that he *sold* each defendant a 2% interest of the "goodwill" for $3,000.00.

■ The settlement agreement by and between Bennight, defendants, and Southerland, dated October 11, 1968, and the settlement agreement by and between plaintiffs and Southerland, dated October 14, 1968, when considered along with the agreement by and between plaintiffs, Bennight and defendants, dated October 14, 1968, constitute a consent in writing by plaintiffs to the sale by Southerland of his interest in the partnership to the purchasers thereof. The fact that plaintiffs did not consent in writing to the admission of defendants into the partnership on Novem-

ber 1, 1967, or to the sale of the 2% interest by Bennight to each of the defendants subsequent to the date of their admission to the partnership does not exempt defendants from the binding force of the obligations of the July 18, 1966 contract.

Plaintiffs seek only a judicial determination that defendants are bound by the terms and provisions of the July 18, 1966 contract. They do not ask for a recovery in this suit for any delinquent sums of money which may be due them because of defendants' failure to pay them 10% of the accounting and related fees, if any, earned by defendants from their accounting practice subsequent to August 1, 1972. The matter of reversion which is provided in the contract is not part of this appeal, and we express no opinion thereon.

We have read the record in its entirety. A correct judgment was rendered. We have considered all of defendants' points of error, and they are all overruled.

The judgment of the trial court is affirmed.