W. J. McDONALD, Respondent,

v.

Leo STONEBRAKER, et al., Appellants.

No. 46603.

Supreme Court of Minnesota.

June 17, 1977.

Krofchalk & Boraas and Mark G. Stephenson, Rochester, for appellants.

Korman & Peterson and James R. Korman, Faribault, for respondent.

Heard before ROGOSHESKE, PETERSON and MacLAUGHLIN, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff, W. J. McDonald, a real estate broker, sued defendants, Leo and Marjorie Stonebraker, to recover his commission of $12,500 pursuant to an exclusive listing agreement for the sale of defendants' farm. Defendants, appealing from the judgment for plaintiff and from the order denying their post-trial motion for a new trial, contend that the trial court erred in three respects:

(1) That the court's conclusions of law do not follow from its findings of fact because, although the listing agreement conditioned plaintiff's broker's commission upon a sale of the property, the court failed to find that defendants' refusal to sell was not in good faith;

(2) That the court failed to make a finding of fact upon defendants' affirmative defense of fraud; and

(3) That the court ruled that it was without jurisdiction to hear defendants' post-trial motion for amended findings or a new trial more than 30 days after notice of the filing of its findings, Rule 59.03, Rules of Civil Procedure.

Plaintiff, for his part, urges that defendants' appeal should be dismissed for failure to define the issues upon appeal as required by Rule 110.02(1), Rules of Civil Appellate Procedure. We reverse and remand for a new trial on the issues of defendants' good faith refusal to sell and their defense of fraud.

The instant controversy originated on January 22, 1974, with the execution of a 90-day exclusive listing agreement for the sale of defendants' farm. The agreement provided for a total sale price of $250,000, including $50,000 in downpayment and

$5,000 annually under an 8-year contract for deed plus 7-percent interest on the unpaid principal. The agreement also provided for possession in the "spring," and "a commission of 5%, on any sale accepted by [Leo Stonebraker]."

Plaintiff subsequently introduced defendants to a prospective purchaser, Gerald Bauer, who executed a purchase agreement on March 25, 1974. By the terms of the agreement, Bauer offered $250,000 for the farm, the annual payments described in the listing agreement to be made on April 20 of each year. A check for $500 in earnest money accompanied the agreement which provided for an additional cash payment of $49,500 on April 20, 1974. The agreement also provided for transfer of possession April 20, 1974, but upon defendants' request, the date was changed to allow defendants to retain possession until July 1, 1974.

Despite negotiations, the parties never reached agreement on a set of terms and no sale was consummated. The trial court found, nevertheless, that plaintiff "performed his obligations under the listing agreement of January 22, 1974 and produced a competent buyer ready, willing, and able to buy the farm."

The first issue we address is whether the court's legal conclusion that plaintiff performed all of his obligations under the listing agreement follows from the findings of fact, absent a finding that defendants' bad faith precluded consummation of a sale of the property. The findings of fact must support the conclusions of law. See, Rule 52.01, Rules of Civil Procedure; 2 Hetland & Adamson, Minnesota Practice, Rule 52.01, and cases cited.

■ A broker is entitled to his fee when he has performed all that he undertook to perform under his agreement with the seller. *Schramsky v. Hollmichel,* 233 Minn. 481, 47 N.W.2d 177 (1951). See, also, *Olson v. Penkert,* 252 Minn. 334, 90 N.W.2d 193 (1958); 3A Dunnell, Dig. (3 ed.) § 1147, and cases cited. In this case, plaintiff produced a purchaser who agreed to the few terms specified in the listing agreement.

We agree with the trial court's finding that the $50,000 downpayment term was satisfied by the offer of $500 in earnest money and the promise to pay $49,500 less than 1 month later at the time of execution of the contract for deed. In so far as the case of *Gopher State Business Opportunities, Inc. v. Stockman,* 265 Minn. 185, 121 N.W.2d 613 (1963), holds otherwise, it is overruled. In that case we stated (265 Minn. 188, 121 N.W.2d 615):

"We agree with the trial court that it was in error in not granting defendants' motion for a directed verdict. A simple comparison of the listing agreement and the purchase agreement submitted to defendants indicates that the terms of sale proposed in the latter were significantly different from those required by the listing agreement. The purchase agreement provided for a downpayment of $1,000 and another payment of $2,000 on or before January 10, 1961, while the listing agreement required a downpayment of $3,000."

■ The term "downpayment" is not synonymous with the term "earnest money." It would be unreasonable to construe "downpayment" in this listing agreement to require that a check for $50,000 accompany an offer which for numerous reasons might be refused. Ordinarily, a seller is sufficiently protected by division of the downpayment into two installments payable before closing. If the seller wants a certain minimum amount in earnest money, to be forfeited should the buyer default, the seller should so specify. A seller is free, of course, to require the full downpayment in earnest money, but should manifest clearly his intent to do so. In the absence of any such indication, the trial court properly construed the term "downpayment" to be satisfied by the prospective buyer's offer of payment in two installments, close in time to one another, and payable at or before the date of closing.

■ Plaintiff acknowledged in his deposition that, in addition to the terms specified in the listing agreement, there were terms

830

left to be negotiated between the seller and any prospective purchaser. Defendants argue that these terms included the disposition of silage, the date of payment of annual installments on the contract for deed, and the liability for taxes payable in 1974. The trial court apparently looked only to the terms of the listing agreement. Unless the failure to reach agreement on the additional terms left to be negotiated, however, was caused by defendants' refusal to negotiate or their negotiation in bad faith, plaintiff is not entitled to a commission which was conditioned upon sale of the property. *Schramsky v. Hollmichel, supra.*

Plaintiff argues in support of the judgment that defendants failed to inform plaintiff or Bauer as to their reasons for refusing to sell the property. This contention is germane to a determination of defendants' good faith. See, *Sherwood v. Rosenstein,* 179 Minn. 42, 228 N.W. 339 (1929); *Edmundson v. Phenix,* 146 Minn. 331, 178 N.W. 893 (1920).

Contrary to defendants' assertions, the trial court need not find that the buyer and seller reached a "meeting of the minds" on all terms and conditions of a sale. The dispositive issue is defendants' good faith in negotiating a complete agreement. A broker will not be deprived of his commission when the failure to reach a complete agreement is due to the seller's bad faith. We remand for a new trial because there was no finding on the issue of defendants' good faith. Ordinarily we would simply remand for additional findings of fact, but the judge who tried the case has since retired.

Defendants also assert on appeal that they are entitled to a finding on their affirmative defense of fraud. The alleged fraud consists of plaintiff's promise to find them a larger farm, which promise induced them to sign the exclusive listing agreement. Plaintiff argues that the defense was improperly raised and, alternatively, that defendants failed to meet their burden of proof with respect to it.

In their original pleadings, defendants did not specifically plead fraud as an affirmative defense nor state with particularity the facts giving rise to the alleged fraud as required by Rules 8.03 and 9.02, Rules of Civil Procedure. However, the trial court allowed defendants to orally amend their pleadings after commencement of trial.

Rule 15.01, Rules of Civil Procedure, authorizes the trial court to liberally grant leave to amend pleadings "when justice so requires." In the absence of a manifest abuse of discretion, we will not reverse the trial court's actions in allowing or disallowing amendments. *LaSalle Cartage Co. Inc. v. Johnson Bros. Wholesale, Liq.,* 302 Minn. 351, 225 N.W.2d 233 (1974). A major consideration in the trial court's decision is the prejudice which may result to the opposing party. *Brendsel v. Wright,* 301 Minn. 175, 221 N.W.2d 695 (1974). The burden of proving prejudice is on the objecting party. *LaSalle Cartage Co. Inc. v. Johnson Bros. Wholesale Liq., supra. Brendsel v. Wright, supra.* Plaintiff has not shown prejudice going to the merits. He merely asserts conclusorily that defendants' failure to initially plead fraud denied him "the right to refute and defend this allegation." In any event, because the trial court erred in failing to make a finding with respect to the defense of fraud and a new trial is necessary, plaintiff will have the opportunity to relitigate the issue upon retrial.

Given our disposition of the above issues, we need not reach defendants' additional argument that the trial court erred in ruling that it was without jurisdiction to hear their motion for new trial.

Plaintiff requests that defendants' appeal be dismissed for failure to adequately define the issues to be appealed as required by Rule 110.02(1), Rules of Civil Appellate Procedure. Defendants informed plaintiff of their intent "to appeal on all issues previously litigated." Despite their comprehensive appeal, defendants ordered only a partial transcript. Plaintiff argues that he was without adequate information to determine whether to have additional portions of the transcript included in the

record on appeal. Although we fail to understand why defendants did not order a complete transcript, we hold that plaintiff was not prejudiced by the partial transcript and the abbreviated notice. The issues presented by this case are issues of law. Even if we had the benefit of the complete transcript, we would not decide in the first instance the issues of fraud and good faith, turning as they do upon questions of fact and credibility.

Reversed and remanded for new trial.