Robert TJERNLUND, a.k.a. Robert L. Tjernlund, Appellant,

v.

Charles E. KADRIE, a.k.a. Chuck Kadrie, et al., Respondents.

No. C4-87-2101.

Court of Appeals of Minnesota.

June 14, 1988.

Review Denied Aug. 24, 1988.

Bruce A. Rasmussen, Rasmussen and Ball, Minneapolis, Seth M. Colton, Patricia A. Comeford, Maun, Green, Hayes, Simon, Johanneson and Brehl, St. Paul, for appellant.

Darrell B. Johnson, Hessian, McKasy & Soderberg, P.A., Barry Lazarus, Lazarus and Kelly, Minneapolis, for respondents.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and NORTON, JJ.

## OPINION

FOLEY, Judge.

Appellant Robert Tjernlund, a.k.a. Robert L. Tjernlund, sought a declaratory judgment that he is the sole fee simple owner of two limited partnership properties. He also requested that the trial court order the other partners, respondents Charles E. Kadrie, a.k.a. Chuck Kadrie, and Syn-Real Funding Associates, Inc., to 1) turn over all the books, records, keys and other personal property necessary to the management of

the properties, 2) provide an accounting of the income and expenses of the properties, and 3) to refrain from taking any action which would interfere with Tjernlund's ownership of the limited partnership properties.

At trial Kadrie and Syn–Real sought to amend their pleadings to include a claim for refinancing fees. The trial court allowed the amendment and awarded Syn–Real the refinancing fees. Finding an underlying partnership agreement controlled the actions of the parties, the trial court held Tjernlund personally liable for these fees and conditioned his possession of the properties on payment of these fees and other proper liabilities of the partnerships. Tjernlund moved for a new trial and for amended findings of fact, conclusions of law and order for judgment. The trial court denied Tjernlund's motions. We affirm in part, reverse in part, and remand.

## FACTS

Tjernlund and Kadrie entered into three partnership agreements, two of which are the subject of this appeal. All three partnerships were formed for purposes of acquisition, development and holding for investment purposes rental apartment buildings. Tjernlund contributed the capital needed for renovation and acquisition and Kadrie managed the renovations.

On February 10, 1984 Tjernlund and Kadrie created a limited partnership called 2828 Portland Avenue South (respondent herein). Syn–Real, a Minnesota corporation of which Kadrie was president and a major shareholder, was the general partner and Tjernlund was the only limited partner. However, Syn–Real and Tjernlund agreed that Tjernlund would participate in the management of Portland in contravention of the limited partnership agreement. Through 1985 Syn–Real invested $100 in the project while Tjernlund invested $83,900 and received tax deductions of $105,204.

On June 19, 1984 Tjernlund and Kadrie created 2530–32 First Avenue South (respondent herein), a limited partnership with Syn–Real as the general partner and Tjern-

lund as the sole limited partner. The parties agreed that Tjernlund would also participate in the management of this partnership in contravention of the limited partnership agreement. Through the end of 1985, Syn–Real contributed $100 to the partnership while Tjernlund contributed $165,323.12 and received tax deductions of $183,571.

Both the Portland and First Avenue partnership agreements contained the following:

4.03 *Distributions of Net Proceeds of Financing.* Net proceeds of financing or distributions from the principal amount of the Partnership's operating reserve shall be distributed, subject to the proper payment of Partnership fees and obligations as they become due to the Partners in the same proportion as set forth in Section 4.01. If an independent broker or agent is not retained by the General Partner to conduct such refinancing, the General Partner shall be entitled to charge a fee equal to five percent of the gross amount received from said refinancing by the Partnership for services in arranging and closing said transaction. If an independent broker or agent is retained in said transaction and paid a commission, the General Partner will be entitled to charge a fee of two percent of the gross amount received from such refinancing for its services in arranging and closing said transaction to be paid in addition to said agent or broker commission.

Syn–Real successfully negotiated and closed financing on both the Portland and First Avenue properties. On February 1, 1985 a new mortgage in the amount of $260,000 was closed on the Portland property. In June 1985 a new mortgage in the amount of $835,000 was closed on the First Avenue property. Due to financial problems with the partnerships, payment of the refinancing fees on these properties was deferred and remain unpaid.

By May 1985 the partnerships were fraught with problems. Tjernlund was dissatisfied with the performance of his investments. He was concerned that the

First Avenue property remained unsold and that the Portland and First Avenue properties remained unsyndicated. His dissatisfaction was heightened by his inability to obtain an accounting from his partners. In response, Kadrie claimed Tjernlund failed to make the contributions required to pay the costs of the properties renovation and rehabilitation. He contended that rental income from the properties was used to pay these costs.

On May 15, 1985 Tjernlund informed Syn–Real and Kadrie that he intended to proceed with the dissolution of the Portland and First Avenue properties. He notified them that if the purchase of his interest was not consummated in three weeks he would dissolve the partnerships.

In an attempt to resolve their difficulties, Tjernlund and Kadrie on November 7, 1985 entered into an agreement regarding the ownership and operation of the three properties. The agreement provided in part:

I. Tjernlund and Kadrie shall share tax benefits on all properties as follows:
  A. Tjernlund 99%
  B. Kadrie 1%

II. Tjernlund and Kadrie shall both borrow money to pay all past due bills.

*     *     *     *     *     *

IV. Tjernlund and Kadrie shall share equally in the net profits on the disposition of the aforementioned properties.
  A. Net profits are defined as those funds remaining after:
    1. Return of contributed funds to Tjernlund and Kadrie.
    2. Repayments of all bills incurred in the day to day operation of the subject properties.
    3. Repayment of all bank loans related to the subject properties.
    4. Payment of all Disposition and closing costs.

V. Tjernlund and Kadrie shall share an equal voice in the day to day management of the properties. * * *.

VI. [Respondent KAJA MANAGEMENT COMPANY] shall manage the properties.

Further discussions and negotiations ensued. On December 18, 1985, these negotiations culminated in the execution of two documents, an agreement and an assignment. The agreement provided that Syn–Real would deliver to Tjernlund quit claim deeds to the properties. It further provided that Tjernlund would 1) hold Syn–Real harmless from mortgage liabilities, 2) pay the existing and future proper liabilities of the partnerships, and 3) hold Syn–Real and its principals harmless from such debt. Tjernlund and Kadrie also agreed to share the proceeds from the sale of the properties in accordance with their agreements. It is conceded by all parties that the agreement of December 18, 1985 was supported by ample consideration. Tjernlund further concedes the agreement resolved all the parties' differences up to that date.

By the terms of the assignment, Syn–Real assigned its interest as a general or limited partner in the First Avenue and Portland properties to Tjernlund. A short time later, Tjernlund demanded that Kadrie turn over possession and management of the properties. Kadrie refused.

On April 25, 1986 Tjernlund commenced a declaratory judgment action to enforce the terms of the December 18, 1985 agreement and assignment. The trial court concluded that Tjernlund was the sole general partner and the sole limited partner of both the Portland and First Avenue partnerships. However, the trial court found that in addition to the formation of the three partnerships, an underlying partnership existed. This partnership incorporated a separate agreement by which the parties operated the partnerships. This underlying agreement, the December 18, 1985 agreement which incorporated by reference sections of the November 7, 1985 agreement, created an equitable interest in the partnership properties in both Tjernlund and Kadrie. On the basis of this underlying partnership agreement, the trial court awarded Kadrie an equitable lien in the property to secure Tjernlund's obligations to pay third party creditor claims. Upon payment, the lien would be extinguished and Tjernlund entitled to all incidents of ownership of the

properties including exclusive possession. Kadrie was also awarded a second equitable lien in the properties to secure payment to him by Tjernlund of an equal share of the net profits on the disposition of the properties.

At trial, Syn–Real was allowed to amend its pleadings and assert a claim for refinancing fees. The trial court awarded Syn–Real $54,750 in refinancing fees and held Tjernlund personally liable for the payment of these fees.

## ISSUES

1. Did the trial court err in granting an amendment to Syn–Real's pleadings?

2. Did the trial court err in determining that Tjernlund owed Syn–Real refinancing fees?

3. Did the trial court err in determining that Tjernlund was personally responsible for payment of the refinancing fees?

4. Was Tjernlund's obligation to pay the refinancing fees excused by a breach of the agreement by Syn–Real?

5. Did the trial court err in failing to order Kadrie and Syn–Real to provide an accounting of the income and expenses from the partnership property?

6. Did the trial court err in conditioning Tjernlund's possession of the properties upon payment of proper liabilities including the refinancing fees?

## ANALYSIS

■ 1. The decision to permit a party to amend pleadings rests within the discretion of the trial court and will not be reversed absent a clear abuse of discretion. *Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn. 1980). A major consideration in the trial court's decision is the prejudice that may result to the opposing party. *McDonald v. Stonebraker*, 255 N.W.2d 827, 830 (Minn. 1977). The burden of proving prejudice is on the party opposing the amendment. *Id.*

Tjernlund asserts judgment in favor of Syn–Real for refinancing fees must be reversed because the post trial amendment denied him the opportunity to notice of a claim or the ability to present witnesses and evidence in opposition to the claim. Tjernlund argues Syn–Real failed to plead its counterclaim for refinancing fees. He contends Syn–Real did not request an amendment of its counterclaim at trial for refinancing fees. Tjernlund argues the trial court did not grant an amendment as to Syn–Real's counterclaim but only as to KAJA's and Kadrie's counterclaims.

It is true that Syn–Real did not plead its counterclaim for refinancing fees but sought to amend its pleadings at trial. The trial court mistakenly amended paragraph 33 of the counterclaim which, as Tjernlund argues, applies only to KAJA and Kadrie. We observe that at trial it was Tjernlund who initially stated that paragraph 33 was the counterclaim that needed to be amended. To deny the amendment under these circumstances would be hypertechnical. In any event, it is clear from the transcript the trial court's intention was to allow Syn–Real to amend its pleadings to include the refinancing fees.

Minn.R.Civ.P. 15.02 provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that admission of such evidence would prejudice him in maintaining an action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The issue of refinancing fees first arose on the second day of trial and was fully litigated from that time to the end of trial. The trial court offered Tjernlund a continuance which he refused stating that no additional time was needed and that he was willing to proceed. Tjernlund cannot now complain he was prejudiced by this amendment. Furthermore, with all the parties before it, the trial court could grant such relief as the case warranted. Tjernlund was neither surprised nor prejudiced by this amendment.

2. Tjernlund contends Syn–Real knew of its claim to receive a refinancing fee yet executed an assignment on December 18, 1985. Tjernlund asserts the assignment of Syn–Real's partnership interest gives Tjernlund the right to receive distribution of partnership assets and that these refinancing fees are partnership assets. In addition, Tjernlund argues these refinancing fees did not constitute a loan nor was Syn–Real a creditor for purposes of receiving them.

Minn.Stat. § 322A.56 (1984) provides in part: "An assignment entitles the assignee to receive, to the extent assigned, only the distribution to which the assignor would be entitled."

Section 2.05 of the limited partnership agreements defines the Net Proceeds of Financing as:

[T]he gross proceeds of any borrowings of the Partnership less the sum of: (i) any amounts used to repay then existing loans of the Partnership and to pay and provide for all debts and obligations of the Partnership then due, (ii) all expenses of such borrowings including, without limitation, all commitment fees, broker's or agent's commissions, charges by the General Partner and attorney's fees, and (iii) any amounts used for the purposes described in subsection 2.03 a., b. or c. or described in subsection 2.03d.

This section combined with section 4.03 shows that the payment of refinancing fees is not a distribution but a prior claim against the partnership.

The trial court correctly found the refinancing fees claimed by Syn–Real at the effective date of the assignment were debts of the partnership to Syn–Real. Under Section 4.03 of the partnership agreement, Syn–Real had earned these fees on the dates that the refinancing was completed. The trial court found although the fees were due at the time of refinancing, the parties had deferred the payment of these fees and by so doing Syn–Real had waived interest on the amount due.

In addition, the testimony at trial revealed that all parties were treating these fees as loans. At trial Tjernlund did not dispute the fact that the parties at all times considered the deferral of these refinancing fees to be a loan. To permit Tjernlund to now object to the classification of these deferred fees would be inequitable. *See Lundstrom v. Navickas,* 295 N.W.2d 626, 628 (Minn.1980).

3. Tjernlund argues the trial court mistakenly reasoned that by virtue of the December 18, 1985 assignment Tjernlund became a general partner of the two limited partnerships and therefore personally liable for the refinancing fees.

The assignee in an assignment of a partnership does not become a partner by virtue of the assignment. Minn.Stat. § 322A.56 (1984). Minn.Stat. § 323.16 (1984) mandates liabilities for pre-existing obligations be satisfied only out of partnership property. *See also Miller v. Doughty,* 520 S.W.2d 586, 591 (Tex.Civ.App.1975); *Simkins v. Outdoor Resorts South Padre Island,* 684 S.W.2d 754, 756 (Tex.Civ.App. 1984).

However, the trial court found Tjernlund personally liable not because of the assignment but on the basis of the underlying partnership agreement. On December 18, 1985 two documents were executed. One was the assignment of Syn–Real's interest in the partnerships and the other was an agreement between Kadrie and Tjernlund. According to the agreement:

2. Mr. Tjernlund will pay the future and proper liabilities of the partnerships, limited and general and hold Syn–Real,

its principals and the KAJA firms harmless from such debt.

It is this agreement that makes Tjernlund personally liable for the fees.

This entire issue arises from the trial court interchanging the words assignment and agreement. In its conclusion of law number 8 the trial court states: "Plaintiff Robert Tjernlund, by virtue of the assignment of December 18, 1985 is jointly and severally liable for these amount." The trial court confused assignment and agreement. This is evidenced by finding of fact # 9 which concludes:

Pursuant to this December 18, 1985 agreement and in accordance with Section 5.12 (a)(iii) of the Portland Avenue L.P. and First Avenue L.P., Syn–Real assigned all of its rights, title and interest in the Portland Partnership and First Avenue Partnership to Tjernlund.

■ A decision is not to be reversed if it is correct although based on incorrect grounds. *Braaten v. Midwest Farm Shows*, 360 N.W.2d 455, 457 (Minn.Ct.App. 1985). The trial court was eminently fair in its handling of this case. To find reversible error by an inadvertent use of the word "assignment" instead of "agreement," would be to strain the rules of appellate review to the ultimate. We decline to do so.

4. Tjernlund argues Syn–Real breached the underlying agreement in December 1985 when it failed to turn over possession of the properties to Tjernlund and therefore Tjernlund was excused from the performance of any obligation under the agreement.

Tjernlund raises this issue for the first time on appeal. Because he failed to plead this affirmative defense at any time during trial, the issue is not properly before this court. *See* Minn.R.Civ.P. 8.03; 12.02.

■ 5. A partner has the right to a formal account when "circumstances render it just and reasonable." Minn.Stat. § 323.21(4) (1984). We find an accounting would be reasonable given the circumstances of this case. An action for an accounting is equitable. *Maras v. Stilinovich*, 268 N.W.2d 541, 545 (Minn.1978). Equity has exclusive jurisdiction of unsettled matters between partners. *Johanik v. Des Moines Drug Co.*, 235 Iowa 679, 682, 17 N.W.2d 385, 390 (Iowa 1945).

■ Tjernlund conceded the December 18, 1985 agreement resolved all prior disputes between the parties. Therefore, he has no right to a formal accounting of the partnerships prior to the date of this agreement. However, the matter of the profits and rents on these properties from December 18, 1985 until the date of trial remains unsettled. Therefore, we remand to the trial court for a partial accounting of the partnerships from the date of the December agreement to the date of trial.

■ 6. Tjernlund contends the agreement obligating him to pay liabilities also provided him protection he never received, possession of the properties and the right to receive the income from these properties after December 1985. Therefore, Tjernlund argues his possession of the properties should not be conditioned on payment of the proper liabilities of the partnership including the refinancing fees.

The basis for the trial court's decision was its finding that an underlying partnership agreement existed between Kadrie and Tjernlund which resulted in each of them having an equitable interest in the partnership property. The trial court found Tjernlund breached this agreement as he had agreed to pay all existing and future liabilities of the three partnership properties. The trial court terminated this underlying partnership and granted equitable liens on the real estate in favor of Kadrie to ensure Tjernlund's payment of the third-party creditor claims. Conditioning of Tjernlund's exclusive possession upon payment of the proper liabilities including the refinancing fees was not an error because Kadrie still had an interest in the property pursuant to the underlying partnership agreement.

Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the trial court's decision. Minn.R.Civ.P. 52.01. The trial court's find-

ing an underlying partnership agreement existed which controlled the actions of these parties is supported by the record. Based on this underlying partnership agreement, the trial court did not err in conditioning Tjernlund's possession of the properties upon payment of the proper liabilities of the partnership including the refinancing fees.

## DECISION

Our task in appellate review is to determine if there are errors of substance compelling reversal. Here, after careful review of the case, we conclude that the trial court correctly determined that an underlying partnership agreement controlled the actions of these parties and governed their rights. However, given the circumstances of this case, we find Tjernlund is entitled to an accounting of the profits and rents on the properties for the period following the December agreement to the date of trial.

Affirmed in part, reversed in part, and remanded.